## THE PEOPLE *v.* W. A. HENDERSON.

TIME OF OBJECTING TO GRAND JURORS.—If the defendant is in custody, objections to grand jurors, on the ground of not being citizens or taxpayers, must be taken by challenge when the grand jury is impanelled, or they are waived.

CHALLENGE OF TRIAL JURY FOR CAUSE.—Unless it clearly appears from the answers of the juror that the District Court erred in its ruling upon a challenge

---

Points decided.

---

for cause in a criminal case, the verdict will not be set aside on that ground by an appellate Court.

TESTIMONY OF QUARRELS OF DECEASED ON MURDER TRIAL.—On a trial for murder, testimony of quarrels of the deceased with a person other than the defendant, and threats made by deceased against such person immediately before the homicide, is not admissible on the part of the defense, if the defendant was not present and the facts were not brought to his knowledge before the killing.

ERROR IN REJECTING TESTIMONY CURED.—If, on the trial of a criminal case, the Court erroneously rejects testimony offered by the defense, and the testimony is closed, and the Court adjourns until the next day, and upon the meeting of the Court on the next day it offers to allow the rejected testimony, and to give time to defendant to send for his witness, or to allow him to read the testimony taken down by the Clerk on a former trial, and he elects to read, and does read the testimony taken down, the judgment will not be reversed because of the first error.

INSTRUCTION IN LANGUAGE OF STATUTE.—There was no error in giving section thirty-seven of the Act concerning crimes and punishments, in the language of the statute, as an instruction to the jury.

REPUDIATION OF AGREEMENT IN CRIMINAL CASE.—The appellate Court will not reverse a judgment of conviction, in a criminal case, by reason of alleged error in a proceeding had in the course of the trial, by express agreement of the defendant and his counsel, unless bound to do so by some controlling rule of law.

CHANGE OF JUDGES DURING A CRIMINAL TRIAL BY CONSENT—If, after the evidence is closed on the trial of á criminal case, the Judge of another district, with the consent of the defendant and his counsel, upon the request of the Judge who commenced the trial, takes the place of the presiding Judge, charges the jury, and receives the verdict, a verdict of guilty will not be set aside on the ground of irregularity in this respect.

WAIVER OF OBJECTION TO CHANGE OF JUDGES IN CRIMINAL CASE.—If, in the progress of a criminal trial, the Judge of the district leaves the bench, and another Judge takes his place, and hears the argument and receives the verdict, and the Judge of the district afterwards resumes his seat upon the bench, and passes on a motion for new trial without objection, the defendant waives any objection to the further control of the proceedings and the passing of sentence by the Judge of the district in which the trial was had.

CHANGE OF JUDGES BEFORE SENTENCE IS PRONOUNCED.—The Judge of a district in which the cause was tried may pass sentence on a verdict of guilty, when the Judge of another district presided during the argument of the case to the jury and received the verdict.

WHO MAY PRONOUNCE SENTENCE ON VERDICT.—A Judge who did not try the case, if legally presiding, has jurisdiction to pronounce sentence.

APPEAL from the District Court, Fourteenth Judicial District, Placer County.

The defendant was indicted for killing one James Drew. This was the second trial of the defendant on the indictment.

The defendant appealed from the judgment and order denying a new trial.

The other facts are stated in the opinion of the Court.

*Jo. Hamilton,* for Appellant.

The Court erred in allowing the challenge to the juror tried for cause. He had neither formed nor expressed an unqualified opinion. (Wood's Digest, p. 296, Sec. 347; *People* v. *Reynolds,* 16 Cal. 110.)

Eisner's testimony should have been stricken out. The defendant does not appear to have been cognizant of or had anything to do with Mills' declarations or acts, and his testimony was calculated to prejudice him in the minds of the jury.

The Court should have allowed the testimony of McIntire, Ford, and Harford. The defense was that the act was committed in self defense. Whatever tended to show that the defendant had reasonable cause to believe himself in danger, was admissible. This testimony, although defendant was not present, would have shown the dangerous character of deceased. (*People* v. *Arnold,* 14 Cal. 476.)

The Court erred in rejecting the testimony of witness Starr, as to what a witness for the defendant, who had died, had testified to on the first trial of defendant. (1 Phillips on Ev. 337, 338, 339; 1 Greenleaf on Ev., Secs. 163, 166.) The prosecution contend that this error was cured by the subsequent offer of the Court to admit the testimony. A defendant intrusts his case to his attorney, who arranges his testimony and introduces one branch of it at a time. If testimony is improperly rejected and the case closed, and an offer made the next day to allow it, the effect on the jury is prejudicial to the defendant. They had the period of the adjournment of the Court to reflect on the case as it stood, and of course their minds are influenced by it.

The assent of the defendant to a change of Judges cannot cure the error. (*Muldrow* v. *Norris,* 2 Cal. 78.) The Judge who had not heard the argument or reviewed the verdict, was not authorized to pronounce sentence. (Section 27 of Laws of 1863, page 336, is fully explanatory of this point.)

*J. G. McCullough, Attorney-General,* for the People.

The defendant was in custody, and should have challenged the grand jurors in the County Court. Assuming that the challenge of Kind was for implied bias, I contend that allowance of a challenge to a trial juror for implied bias is not a ground of exception. (Crim. Prac. Act, Sec. 433.) If the defendant challenges, and the challenge is disallowed, this may be a reversible error. Even if the allowance of a challenge is ground of an exception, how can it be said that the defendant suffered any injury? (Crim. Prac. Act, Sec. 499.) The defendant was tried by a competent jury. (*People* v. *Gatewood*, 20 Cal. 149.)

The testimony of Eisner about the knife was a part of the *res gestæ.* The rejection of the testimony of McIntire and others was not error. The acts of the deceased towards persons other than defendant were not relevant. The case of *The People* v. *Arnold* decides that where the plea is self defense, the declaration of deceased at the time of borrowing the weapon may be proved to show the purpose for which it was borrowed. The alleged error in rejecting Starr's testimony was cured by the subsequent action of the Court. Merely because the Court made an error and then rectified it, is not ground of reversal. (1 Greenleaf on Ev., Sec. 431.)

Defendant had a right to agree to a change of Judges. (*People* v. *Garcia*, 25 Cal. 531; *French* v. *Teschemacher*, 24 Cal. 559.) The new Judge had a right to sit and hold a Court (not a term merely, as the law formerly stood) on the request of the presiding Judge. (Laws 1863, p. 336, Sec. 27; *People* v. *Wells*, 2 Cal. 207.)

By the Court, SAWYER, J.

The defendant was indicted for murder, tried and found guilty in the second degree.

Defendant moved to set aside the indictment on the ground that Charles Gould, one of the grand jurors, at the time he

was summoned, was not a citizen, although he was a citizen at the time the Grand Jury was impanelled, he having, in the meantime, been naturalized; and that Gould Osborne, another grand juror, was not a taxpayer. The defendant, being in custody, was present in Court with his counsel at the time the Grand Jury was impanelled, examined such jurors as he saw fit as to their qualifications, and exercised his right of challenge. No objection was then made to either of these two jurors, nor did defendant question them upon the points referred to. Conceding the point to be otherwise good, under these circumstances the objection came too late, when taken for the first time after indictment found. The objection should have been made by challenge at the time of the impanelling of the jury. (Crim. Prac. Act, Secs. 183, 189, 297; *People* v. *Colmere*, 23 Cal. 632; *People* v. *Arnold*, 15 Cal. 479; *People* v. *Chung Let*, 17 Cal. 322; *People* v. *Romero*, 18 Cal. 93.)

The answers of the juror, Kind, are such that we should not be justified in saying that the Court erred in allowing the challenge on the part of the prosecution. The most that can be said is, that the answers do not disclose a clear case, and where error is not clearly shown, the ruling of the District Court will not be disturbed.

There was no error in refusing to strike out the testimony of Eisner.

The Court having refused to permit defendant to prove by McIntire, Ford, Harford, and others, that at the public meeting on the evening of the homicide, deceased drew his knife upon a stranger, and would have cut him had he not been prevented, also, that he slapped the naked knife against the cheek of another man, at the same time using threatening language, this ruling is assigned as error. Defendant was admitted not to have been present at the time the transactions offered in evidence took place, and defendant's counsel did not offer to show that these acts were brought to the knowledge of defendant. The counsel for the prosecution at the time stated that he did not object to their giving in evidence any

declaration made by deceased against the defendant. We think there was no error in excluding these acts and quarrels of deceased with other parties having no relation to the defendant. With still less plausibility can it be urged that the acts of a similar character, which transpired some ten days before, offered to be proved by other witnesses were admissible.

No exception was taken to the ruling in rejecting Carnahan's testimony to declarations of defendant made an hour or so before the homicide. Besides they were inadmissible. (*People* v. *Wyman*, 15 Cal. 74.)

The defendant offered to prove by Starr what a witness testified at a former trial, said witness having since died. The Court rejected the testimony, on objection by the District Attorney. The testimony having been closed, Court adjourned till the next morning. On the opening of Court in the morning, the District Attorney stated that he was inclined to think the testimony ought to have been admitted, and offered to allow the case to be opened and the testimony introduced, to which suggestion the Court assented. The defendant then raised the objection that his witness had gone home, whereupon the Court offered to give him any reasonable time to procure the witness, or to allow him, if he preferred it—the District Attorney consenting—to read the testimony of the deceased witness from the minutes of his testimony taken down by the Clerk on the former trial. Defendant finally concluded to read the evidence from said minutes—still reserving his exceptions—and it was so read. It is claimed that these proceedings were erroneous and that the defendant was injured thereby. We do not see how the defendant was injured. The error at first committed was afterwards rectified by the Court. We have read all the testimony in the case, and from the character of the testimony we cannot see that, in this instance, it could be a matter of the slightest consequence at what particular point in the defense it came in. The testimony appears, upon its face, to have been very fully and very well taken down, and in that form it is quite evident that it is much more satisfactory than the mere recollection

of some other person could well be. At all events, the defendant concluded to put the evidence in, and to read it from the minutes, rather than send for the witness. The Court did not compel the defendant to put in the evidence in any form. It merely gave him the opportunity, of which he concluded to avail himself. There is nothing in this part of the proceeding that would justify a reversal of the judgment.

The observations already made apply to all the testimony rejected. Besides, there is much testimony uncontradicted in the case upon all the points covered by the rejected evidence, and, if admitted, it would only have been cumulative upon points about which there does not seem to have been any controversy. But we think there was no error in the rejection of evidence.

We think the evidence entirely sufficient to sustain the verdict. It is possible, as suggested by defendant's counsel, that the jury, if they erred at all, leaned to the side of mercy in finding the prisoner guilty of murder in the second degree. But if so, he surely has no reason to complain on that ground.

The only instruction complained of was copied from the Act relating to "crimes and punishments," (Laws 1850, p. 232, Sec. 37.) There is no error in giving this instruction.

At the close of the testimony the District Judge, who had thus far presided at the trial, was informed by telegraph that his presence was immediately required at home, in consequence of the dangerous illness of a member of his family. It was thereupon agreed by the parties, the prisoner consenting thereto, that the Judge of the Sixth Judicial District might sit during the remainder of the trial; and, at the request of the presiding Judge, in pursuance of this agreement, the Judge of the Sixth District appeared at the hour appointed for opening the Court on the following morning, and held the Court till the conclusion of the trial and the rendition of the verdict. The testimony was all in, with the exception of the testimony of the deceased witness, which was afterwards read from the minutes of the Court, as before stated. The Judge of the Sixth District heard the argument, charged the jury,

and received the verdict. No question is made upon the charge, except upon the instruction given copied from the statute before referred to, and it must therefore be presumed to Ħave been satisfactory. The chargé given' is manifestly adapted to the evidence in the case, and was probably written by the retiring Judge. After the rendition of the verdict, and before the day appointed for passing sentence, the Judge of the district in which the case was tried—the Fourteenth—resumed his seat on the bench, and finally pronounced the judgment of the Court upon the verdict rendered. Defendant objected, and excepted to his passing sentence.

The defendant now insists that the calling of the Judge of the Sixth Judicial District to preside, after the commencement of the trial, and with the express consent of the defendant, was error. But if not, that it was error for the Judge of the Fourteenth District to resume his place upon the bench and conduct the proceedings subsequent to verdict.

It is not surprising that the first point was not very distinctly made on the oral argument. It is squarely made, however, in the brief, notwithstanding the embarrassment under which counsel must be supposed to have labored in repudiating an express agreement after taking the chances of an acquittal, and losing. This course, it is true, is not without precedent, but the practice is not to be commended, and it cannot be supposed that an experiment of the kind will be successful, unless the Court is bound by some controlling rule of law.

In this case we think the verdict is not vitiated by the violation of any principle of law. The Judge of the Sixth District was authorized by the statute, upon the request of the Judge of the Fourteenth District, to hold the Court. He held the Court upon such request. The Court was a regularly authorized tribunal, having jurisdiction to try the cause. Although it is desirable that the same Judge who commences the trial should sit until it is completed—and in many cases, doubtless, it would be impracticable to do otherwise—yet, in some instances, as in this, there may be no inconvenience resulting from the taking up of the case by another Judge

after the testimony closes.   And if the parties interested consent to such a course of proceeding, we can see no objection to it.   The parties interested are in a condition to judge whether the circumstances of the case are such that they are liable to be affected unfavorably by the change.   After deliberately consenting to such a change, and taking the chances of a successful issue, and losing, they cannot be permitted to repudiate the proceedings and avail themselves of the chances of a more favorable result on a second trial.

Appellant claims that the Judge of the Sixth District having taken charge of the case with the consent of the prisoner, it was incompetent for the Judge of the Fourteenth District to again sit in the case without his consent.

After the rendition of the verdict, the Judge of the Fourteenth District resumed his seat, and acted in the subsequent proceedings.   Defendant prepared his statement and moved for a new trial before said Judge, and the motion was heard and decided without any objection to his acting.   No objection was made to the Judge of the Fourteenth District resuming his functions in the case—although his leaving the bench was made one of the grounds of the motion for a new trial—until the time for passing sentence had arrived, and all other resources had failed, when the objection was taken for the first time on motion in arrest of judgment.

These proceedings taken and voluntarily prosecuted by the defendant himself before the Judge of the Fourteenth District operated as a waiver of any objections to his acting further in the case, and, upon defendant's own theory, it would have been improper for the Judge of the Sixth District, after the denial of the new trial, to again resume a seat on the bench for the purpose of passing sentence; and had he in fact done so, the defendant would, doubtless, have again interposed an objection on that ground.   But we think on other grounds the Judge of the Fourteenth District did not err in passing sentence.   As before stated, the Court was properly organized. It was a legal Court, and had jurisdiction of the case.   The

60

question is one of regularity, or perhaps only of propriety, and not of jurisdiction. The Judge was the Judge of that Court. There was a legal verdict, and it only remained to pronounce the sentence of the law. Had the case been tried before the Judge of the Court, and had the Judge died or resigned after the rendition of the verdict, and before the time for passing sentence had transpired, and another Judge been appointed or elected to fill the vacancy, there can be no doubt that it would have been competent for the Judge newly appointed or elected to pass sentence. The Court is the same, although a different person occupies the position of Judge. This must be so, or no sentence in such cases could be passed. What else could be done? There is no provision for discharging a person under such circumstances, and there would be no propriety in so doing, or in trying him again; for there is already a valid verdict of conviction standing against him, which cannot be got rid of. If the judgment should be reversed, it could only be sent back for the purpose of giving an opportunity to the Judge of the Sixth District to review the proceedings and pass sentence upon the verdict. Nothing arising subsequent to the verdict can vitiate it, if valid when rendered. A Judge who did not try the case, then, may have jurisdiction to pronounce the sentence. In this case the Judge was possessed of all the facts necessary to enable him to intelligently exercise the discretion conferred upon him by law, in fixing the term of punishment. He had heard, at the trial, all the testimony except that of the deceased witness, which was in writing, and was before him on motion for new trial in the same form in which it was presented to the jury. He did not hear the argument to the jury, but he heard the same questions re-argued after more thorough preparation on the part of counsel on the motion for new trial, where the insufficiency of the evidence was one of the grounds. The Judge who passed the sentence was evidently, then, better prepared to fix the term of punishment than the Judge who read the written charge to the jury and received the verdict could well have been.

We think the principle of the last two points has been directly decided against appellant in *People* v. *Hobson*, 17 Cal. 429. A question as to the propriety of changing the *personnel* of the Court had been suggested, but not decided in *People* v. *Eckert*, 16 Cal. 113. But the suggestion was reconsidered and the point determined in *People* v. *Hobson*. We quote here the observations of Mr. Justice Baldwin upon both points. He says :

" The first error assigned is that the proceedings were irregular in this : That the motion for a new trial was passed on by a Court composed of different members from those before whom the trial was had. This fact only appears by the minutes, in which the names of the Justices composing the Court on the motion and in the previous stages of the trial are recited. No objection to the hearing of the motion by the Justices then present and acting was made by the prisoner. .

"We intimated in a previous case the danger of a reversal of a judgment of conviction for this cause, though no express decision was made upon the point. The question has been more fully argued. We think, under the circumstances here, that the defendant cannot maintain the error assigned. His failure to object to the Justice not sitting before, was itself a waiver of exception for this cause. The objection does not go to the power of the Justice to act, but is merely in the light of an exception to him because it was more proper that the Justice who sat during the trial, and who, therefore, may be supposed to be better acquainted with the history of the case, should pass upon the final motion which involved a review of the previous proceedings. If the defendant was willing that the Justice should sit, he should not be allowed the double advantage of trying his motion before him and of appealing from the decision if adverse, and also the advantage of contesting the propriety of his sitting. Besides, we think that the rule we have recently laid down in *People* v. *Conner*, and other cases, covers this assignment. We there held that the proceedings of the Court of Sessions were to be construed

like those of the District Court, and that the same presumptions attach to them as to those of the District Court. If, from resignation or other such cause, one of the Justices, after a trial, should not be able to sit on the motion for a new trial, unquestionably this would not prevent the matter from being passed upon by another Justice acting in the place of the one thus incapacitated. We must presume that a sufficient reason existed to justify this change in the Bench—in other words, that the Court acted properly in the premises, when nothing is shown to the contrary. These remarks are made upon the assumption that the point, in the absence of these matters of explanation, is well taken. But upon a reconsideration of the subject we are not disposed so to hold. We think that the ends of justice might generally be better subserved if all the members of the Court who heard the case on the trial should sit on the motion for a new trial; but this is not a statutory right or obligation; and it would be going too far if we were to avoid the action of a Court legally constituted, and having full jurisdiction of the subject, merely upon the suggestion that it was not so constituted as to the particular members as more probably to insure an intelligent and satisfactory decision. Cases might arise where this point alone, or in connection with other matters, would entitle a party to a new trial or to a hearing of his motion before the Justices presiding on the trial; but in the absence of a showing of some special cause, we think this single circumstance does not constitute a ground of reversal of the judgment."

These views meet our approbation. It follows that the judgment must be affirmed, and it is so ordered.

Mr. Justice Currey expressed no opinion.