[Crim. No. 7494. Second Dist., Div. Four. Feb. 5, 1962.]

THE PEOPLE, Plaintiff and Respondent, v. JOSEPHINE FOSTER, Defendant and Appellant.

Morris Lavine for Defendant and Appellant.

Stanley Mosk, Attorney General, William E. James, Assistant Attorney General, and Norman E. Sokolow, Deputy Attorney General, for Plaintiff and Respondent.

JEFFERSON, J.—In an information filed by the District Attorney of the County of Los Angeles, defendant was charged as follows:

In count one with violating Penal Code section 337a, sub-

division 1, in that on or about May 12, 1960, she engaged in bookmaking and in count two with a violation of Penal Code section 337a, subdivision 2, in that she kept and occupied an apartment for the purpose of recording and registering bets on horse racing.

Defendant pleaded not guilty. Trial was by the court, trial by jury having been duly waived by defendant and her counsel. Pursuant to stipulation of defendant and counsel the cause was submitted to the court on the testimony contained in the transcript of the proceedings had at the preliminary hearing. Defendant did not testify. Defendant was found guilty of count two and count one was dismissed on the court's motion ''in the interest of justice.'' Motion for new trial was denied. On August 25, 1960, the court sentenced defendant to one year in the county jail. Sentence was suspended and probation granted for 18 months, one of the conditions of probation being that defendant spend the first sixty days of the probationary period in the county jail. Defendant prosecutes this appeal from the judgment.

Officer Robert McIntosh of the Los Angeles Police Department testified that on the morning of May 12, 1960, he received information from a confidential informant that a female person known as Jo would accept wagers on horses if the officer dialed REpublic 4-1805, which telephone the informant said was located at 1216 West 37th Place in the upstairs apartment in the rear. The informant also said that this bookmaker wrote wagers on horses on large sheets of paper.

Officer McIntosh qualified as an expert in the manner and means in which bookmaking was conducted in the County of Los Angeles, including the signs, symbols and paraphernalia used therein. He testified that on the afternoon of May 12, three police officers went to the rear of 1216 West 37th Place, Los Angeles, arriving at 4 p. m. There was a two-story apartment house on the premises. Officer McIntosh approached the premises through the alley. The second story of the apartment building was overhanging the rear about 20 feet. This overhang area was used partially as a carport. There were four 50-gallon drum trash pails against the front wall of the carport under the overhang near the west side of the building.

Officer McIntosh examined the contents of the trash pails. From one he recovered a brown paper sack. Among the items he found therein were a National Daily Reporter dated May 9, 1960, two sheets of white paper about eight by fourteen inches,

a torn envelope with a Maryland address and handwriting, and postcard mailed from the Health Department, City of Los Angeles, addressed to Josephine Foster, 1216 West 37th Place, Apartment 7, Los Angeles 7.

Officer McIntosh testified he found ink notations on the front and back of the envelopes. Among the notations were the number 6 and the words "Paint Brush," then the word "Aqueduct," the number 7, and the words "Mommen Dear." In Officer McIntosh's opinion, he testified, these notations comprised a list of selections that a person had made of horses running at Aqueduct on an ungiven date, which horses were named Paint Brush and Mommen Dear. The officer testified he found about five other similar notations of selections on the envelope, which he interpreted as the names of horses and the tracks and numbers of the races in which the particular horses were running. He testified that in his opinion, such notations were written by a bettor.

Officer McIntosh further testified that he observed certain ink notations on the two sheets of paper which appeared to be telephone numbers and "doodling," and the words Mrs. Foster. On the back of one sheet where it read "Mrs. Foster," the officer said he found the word "Jo," the numerals and letter 5182 XI. Under these notations he testified he found the numerals and letters 5811XX and under these the notation 400. Officer McIntosh testified that in his opinion, these symbols constituted the recordation of a wager by a person identified by the name of Jo, in which the person had wagered $2.00 to win and $1.00 to place on a horse with the index number 518, also a further wager of $1.00 to win on a horse with the index number 581, on an unknown date. The 400 represented the total amount of money wagered in that instance.

Officer McIntosh further testified that after finding the items within the brown paper bag in the trash pail he went to a telephone located near the premises and dialed the aforementioned number REpublic 4-1805. He further testified that he had previously checked out the number with the telephone company and found it was registered to Apartment 7 at the address in question, although not listed to defendant. Officer McIntosh testified that after dialing the number, he had a conversation with a female voice at the other end of the line. In the conversation he attempted to place a wager on horses running for the day. but was unsuccessful in doing so.

Officer McIntosh further testified he terminated the conversation and proceeded immediately to Apartment 7 at that address. He looked through an open peep-hole in the middle of the front door but was unable to observe anyone within the apartment. He was able to hear, however, a sound which he interpreted as that of running feet, the slamming of a door and rapid movement from within the apartment. He rang the doorbell twice but received no answer. He testified he forced entry and observed defendant standing in the hallway, about 15 feet from the front door. From the time of his arrival at the rear of the location until his entry into Apartment No. 7, Officer McIntosh testified he did not see anyone nor did any of the other officers tell him of having seen anyone leave the location.

Officer McIntosh further testified that in looking past defendant, he observed in the right rear bedroom a card table, two racing sections from daily newspapers, a racing parlay manual, a stack of "tout sheets," a telephone, two pens and an electric computing machine situated at the side of the card table in such a manner that a person sitting there could use the machine. Officer McIntosh testified that he observed in the bathroom a telephone laying on the commode, the telephone number of which proved to be RIchmond 5-1805. This telephone was off the hook.

The two racing sections were from the Los Angeles Times and the Mirror-News, and were dated for that day May 12, 1960. They were lying on the card table in the rear bedroom. The "tout sheets" were also lying on the card table and consisted of nine Turf Flash publications for various dates. In the front room twelve National Daily Reporters for various dates were recovered from within a stack of newspapers as well as some 60 sheets of paper which had ink notations thereon. One of these National Daily Reporters, was dated May 12, 1960. It contained a green sheet of paper, a pink sheet of paper, and three white sheets of paper, all of which were approximately 9 by 15 inches and contained ink notations.

Officer McIntosh further testified that in his opinion all the ink notations were records of wagers on horses by various persons at various tracks throughout the country for that date. The notations on one appeared to be a series of columns and figures. In correlating the notations Officer McIntosh further testified he found one group which had the word Boyton and under it in a column of figures the numbers and letters 6352XX. Alongside these were written in red ink the num-

bers 6200 which had been crossed out and above which were written the numbers 5580. Officer McIntosh testified that in his opinion these symbols constituted the record of a wager by an individual identified as Boyton who had wagered $2.00 to win on a horse with the index number 635, which horse had run and won and paid $55.80.

Officer McIntosh further testified he made similar correlations with other ink notations and found approximately 300 separate wagers for that date; that other sheets of paper found in the apartment were similar and were contained within the eleven other National Daily Reporters.

Officer McIntosh testified that he was of the opinion the National Daily Reporters were such publications as were used in bookmaking circles and constituted bookmaking paraphernalia; that eight separate recordations of wagers which appeared as People's Exhibits 1 through 3 were bookmaking paraphernalia.

Another item which the officers found in the apartment was a letter from Sears and Roebuck Company addressed to Josephine Foster at that address, dated August 10, 1959, which was lying on the dressing table in the right rear bedroom near the aforementioned card table.

During the hour or so the officers were in the apartment, the telephone rang about 30 times. On one occasion a female person said at the other end of the line "Jo?" Officer McIntosh replied that Jo was in the bathroom and asked if the caller wanted to leave a message, the caller asked to whom she was talking. Officer McIntosh said he could not tell her who he was but that Jo worked for him. The caller said, "Well, all right, then in the 7th at Hollywood No. 1, parlayed to No. 5 in the 8th at Hollywood, 2 and 1; also in the 8th, No. 5, 1 and 1." He asked who the caller was. The caller said, "Miss B, and I will give you my action. I will give you my bets if you promise to give it to Jo." Officer McIntosh further testified that he indicated he would do so and the caller gave him the name of a horse.

Defendant did not take the stand. She contends the evidence is insufficient to support the judgment of the court. A review of the evidence shows it was sufficient to sustain a conviction of violating Penal Code section 337a, subdivision 2. (*People* v. *Foreman,* 112 Cal.App.2d 616, 619 [246 P.2d 979].)

A violation of Penal Code section 337a, subdivision 2 is committed by "Every person, ... 2. Who ... keeps or occupies ... any room ... of any kind, or any part thereof with a book

or books, paper or papers, apparatus, device or paraphernalia, for the purpose of recording or registering any bet or bets...."

Defendant next contends the court erred in holding there was probable cause for making the search and seizures. This contention is without merit.

A reasonable search without a search warrant may be made of a person and premises as an incident to lawful arrest.

Penal Code section 836 provides in part:

"A peace officer ... may without a warrant, arrest a person; ... 2. When a person arrested has committed a felony, although not in his presence.

"3. Whenever he has reasonable cause to believe that the person to be arrested has committed a felony, whether or not a felony has in fact been committed."

As stated in *People* v. *Fischer,* 49 Cal.2d 442, 446 [317 P.2d 967] : "Probable cause for an arrest is shown if a man of ordinary caution or prudence would be led to believe and conscientiously entertain a strong suspicion of the guilt of the accused. . . . Probable cause may exist even though there may be some room for doubt. . . . The test in such case is not whether the evidence upon which the officer made the arrest is sufficient to convict but only whether the prisoner should stand trial." Since the defendant's arrest was lawful a search incident thereto was legal. (*People* v. *Williams,* 196 Cal.App.2d 726, 728 [16 Cal.Rptr. 836] ; *People* v. *Ruiz,* 196 Cal.App.2d 695, 701 [16 Cal.Rptr. 855].)

Defendant further contends the searches and seizures were in violation of article I, section 19 of the Constitution of California, and the 14th Amendment to the Constitution of the United States. This position is likewise unfounded. As stated in *People* v. *Smith,* 50 Cal.2d 149, 151 [323 P.2d 435] : "Reasonable cause to justify an arrest may consist of information obtained from others and is not limited to evidence that would be admissible at the trial on the issue of guilt."

The officer did have information from a confidential informant that bookmaking was being conducted by a female named Jo at the address indicated and if the officer dialed REpublic 4-1805, which was located at 1216 West 37th Place in an upstairs apartment in the rear, such person would accept wagers on horses. The officer verified the phone number was to a telephone in Apartment 7 and while he was not successful in phoning a bet while calling the number his dis-

coveries in the trash barrel supported the information he received from the informant. The sounds of people running, the slamming of a door and rapid movement from within the apartment and the failure of anyone to answer the doorbell when rung twice despite his hearing the presence of someone in the apartment, all contributed to his well founded belief that the apartment was being used as a bookmaking establishment. The test is not what an untrained person would have reason to believe under such circumstances but what a trained police officer who has had extensive training and experience in the devious and cunning devices used by bookmakers would believe. (*People* v. *Williams*, 196 Cal.App.2d 726, 728 [16 Cal.Rptr. 836].)

 ''Where an arrest is lawful the search incident thereto is not unlawful merely because it precedes rather than follows the arrest.'' (*People* v. *Ingle*, 53 Cal.2d 407, 413 [2 Cal.Rptr. 14, 348 P.2d 577].)

Defendant further contends: ''The Court erred in failing to strike the testimony of the alleged informant on the failure of the prosecution to reveal the name of their informant, or to establish in any event that he was a reliable informant.'' This contention is also untenable. Disclosure is not required where the informer did not participate in the crime with which defendant is charged. As stated in *People* v. *McMurray*, 171 Cal.App.2d 178, 183 [340 P.2d 335] : ''. . . where the arrest is valid apart from the information received from the informer, the latter's identity need not be revealed.''

The evidence here was ample, apart from that received from the informant, to show reasonable cause. The court did not err in its failure to strike the testimony of the police officer concerning the information received from the informant, or in refusing to disclose his name. (*People* v. *White*, 167 Cal.App. 2d 794, 799 [334 P.2d 963].)

 Defendant next contends that she was placed in jeopardy in that her case was submitted on the transcript to one judge of the Superior Court of Los Angeles County, but she was tried before another judge of the Superior Court of Los Angeles County.

The clerk's minutes for July 29, 1960, of the proceedings of department 105 with Judge David Coleman presiding, indicate as follows:

''THE PEOPLE OF THE STATE OF CALIFORNIA, VS. JOSEPHINE FOSTER, 229779. Deputy District Attorney S. Mayerson and

the Defendant with counsel, W. Russell, present. Cause is advanced from August 2, 1960. Defendant personally and all counsel waive trial by jury. The cause is submitted and continued to August 1, 1960, 9 A.M. Defendant bail.'' An affidavit filed by the court reporter indicates that her notes for that day have been lost.

The supplemental clerk's transcript filed July 18, 1961, contains a minute order dated June 16, 1961, department 104, Judge David Coleman presiding, reading as follows:

''THE PEOPLE OF THE STATE OF CALIFORNIA, VS. JOSEPHINE FOSTER, 229779. Cause advanced from August 2, 1960, is called for trial. Deputy District Attorney S. Mayerson, present. Deputy District Attorney Samuel Mayerson is sworn and testified in reference to the proceedings had on July 29, 1960, in Department 105. The minute order of July 29, 1960, is corrected nunc pro tunc as of that date to read as follows:

''The defendant personally and all counsel waive jury trial. By stipulation of all counsel the cause is submitted on the testimony contained in the transcript of the proceedings had at the preliminary hearing, subject to this Court's rulings, with each side reserving the right to offer additional evidence, and all stipulations entered into at the preliminary hearing be deemed entered into in these proceedings. It is further stipulated that all exhibits received at the preliminary hearing are deemed received in evidence in these proceedings, subject to this Court's rulings.

''Further proceedings continued to August 1, 1960, 9 A.M. Remain on same bond. The Clerk and Reporter are ordered to prepare a supplemental transcript of these proceedings.''

The clerk's minutes, for August 1, 1960, of the proceedings of department 105, with Judge Lewis Drucker presiding, indicate as follows:

''THE PEOPLE OF THE STATE OF CALIFORNIA vs. JOSEPHINE FOSTER, 229779. Trial resumed from July 29, 1960. Deputy District Attorney S. Mayerson and Defendant with counsel, W. Russell, present. Both sides rest. Defendant argues. The Court finds defendant 'Guilty' of Count 2. Count 1 is dismissed on the Court's motion in the interest of justice. A Probation Officer's report is ordered. Further proceedings Count 2 and hearing on motion for new trial are continued to August 25, 1960, 9:00 A. M. Remains on bail.''

The reporter's transcript for the proceedings on August 1, 1960, reads as follows:

''THE COURT: People versus Josephine Foster.

"Mr. Russell: The defendant is present and ready, your Honor.

"The Court: Let the record show the presence of the defendant, her counsel and the District Attorney.

"The court has read and considered the testimony given at the preliminary hearing.

"Is there any further evidence on the part of the prosecution?

"Mr. Mayerson: The People rest.

"Mr. Russell: We rest, your Honor."

Undoubtedly, defendant bases her contention that she was placed twice in jeopardy upon the record entered in the minutes and the use of the phrase ". . . the cause is submitted. . . ."

Actually, as the record indicates, there was no witness sworn, or who gave testimony on July 29, 1960. The trial of the cause had not been commenced. The judge presiding at the time had not read the transcript of the preliminary hearing. What in effect transpired on July 29th was the taking of the jury waiver and the entering into a stipulation by the parties that the cause would be tried, at the future date to which it was continued, by the judge sitting without a jury; that the judge would read and consider the transcript of the preliminary hearing and receive any additional evidence that either party might desire to offer at that time.

On the date to which the trial was continued, August 1st, a second judge was presiding in the department. At that time, as the record indicates, this judge was advised by counsel for defendant that the defendant was present and ready to proceed. The judge indicated he had read and considered the testimony given at the preliminary hearing and he afforded the opportunity to present additional evidence. It is to be noted that at this time neither defendant nor her counsel who were present offered any objection, and under these circumstances she is not in any position to object on appeal. (*People* v. *Henderson*, 28 Cal. 465, 475; *People* v. *Norton*, 141 Cal. App.2d 790, 792 [297 P.2d 439]. See also *People* v. *Prezas*, 195 Cal.App.2d 850, 852 [16 Cal.Rptr. 274] as indicative that a waiver of jury trial and stipulation for submission on the testimony taken at the preliminary hearing are effective though they occur before a judge other than the one who presides at the consideration of the case on the merits.

As stated in *People* v. *Marshall*, 184 Cal.App.2d

535, 537 [7 Cal.Rptr. 589] : "The Superior Court is not divided into separate and distinct departments. Jurisdiction is vested by the Constitution in the court, not in a particular judge or department. The Constitution further provides that there may be as many sessions of the court as there are judges. The division into departments is for the convenient dispatch of business. Whether sitting separately or together, the judges hold but one and the same court."

In fact, where the record is silent as it is in the case at bar with respect to any claim of former jeopardy in the trial court, the matter is deemed waived and may not be considered on appeal for the first time. (*People* v. *Garcia*, 166 Cal.App.2d 141, 144-145 [333 P.2d 69].)

The order denying the motion for a new trial and the judgment of conviction are affirmed.

Burke, P. J., and Balthis, J., concurred.