# Metzger *v.* Cramp, Appellant.

*Negligence—Master and servant—Contractor and sub-contractor
—Safe place to work.*

1. It is the duty of a general contractor to provide a reasonably safe place to work, not only for his own employees, but for the employees of a sub-contractor who are engaged in the general prosecution of the work.

2. In an action against a general contractor to recover damages for the death of an employee of a sub-contractor, the case is for the jury, where it appears that the deceased was killed by falling over the edge of a dangerous passageway which was unfamiliar to him, and which had been left unguarded by the removal of a guard rail, at the instance of the general contractor, without notice to persons whose duties required them to work at the place where the accident happened.

Argued Jan. 5, 1912. Appeal, No. 205, Jan. T., 1911, by defendant from judgment of C. P. No. 2, Phila. Co., June T., 1907, No. 3743, on verdict for plaintiff in case of Barbara A. Metzger v. Cramp & Company. Before FELL, C. J., BROWN, MESTREZAT, POTTER, ELKIN, STEWART and MOSCHZISKER, JJ. Affirmed.

Trespass to recover damages for death of plaintiff's husband. Before WILTBANK, J.

At the trial it appeared that the defendants were the general contractors for the erection of a school building, and that Waldman & Co. were the sub-contractors for the painting of the building, and that they employed John M. Metzger, plaintiff's husband. The accident happened on February 26, 1907, the deceased fell while attempting to proceed along a passageway which had been previously protected by a guard-rail, but which had been left unprotected at the time of the accident by the removal of the rail at the instance of the general contractor, without notice to the deceased or other workmen employed in the locality.

VOL. CCXXXV—2

The court charged in part as follows:

Gentlemen of the Jury: On the afternoon of February 26, 1907, Mr. Metzger, the husband of the lady who is here as plaintiff, met with a fatal accident. He fell through a hole, to describe it colloquially, which was in a flooring on what appears to have been the top story of the Manual Training School, at Broad and Jackson streets, in this city. Above that flooring was a ceiling, as I remember, the roof, but he was up there on that story at work. He had been sent up by some one who was authorized to give him the order, and according to the testimony (which, however, is entirely for you to believe or not to believe under your oaths), he had not been up there before. Judging from what Mr. Clark has said, it was the first time that he had been up there. It is for you to determine that. It is an important point, however, and therefore I leave it to you for careful consideration.

That floor was peculiarly constructed. It was not meant, according to the evidence, as a floor all over the space. It was meant largely as the support of glass which was to throw light below, and it was not intended that so much of it as was covered with the glass should be used as a floor. According to the testimony of Mr. Newkirk (and, of course, it is for you to say whether or not you believe that), the glass was not meant to hold a person. It was not meant that the space of that floor, as I have called it, should be used as a floor. It was meant to let the light through from above down to the room below.

There was, however, constructed across that space a running way, as they call it, which was to be used by persons who wanted to move across the floor. That was two feet six inches wide, and it ran from the north wall or side of that building down to the south wall or side, and it was that which was put there for the use of persons who were going to that part of the structure and who were obliged to move about up there.

It appears that on the afternoon in question Mr. Metzger was lawfully going up there to do some painting, and when he emerged from the stairway which carried him from below up to that place, he emerged through a door apparently fronting directly upon that running way, so that desiring, as he did, to go across that space to get to the other side of the building, the other wall, there was the running way for him to use. Had he been accustomed to the place, had he worked there before, and if you find such to be the fact now, there was indicated to him the way he was to go to get across to the other side and do his work, but if he was unfamiliar with the place, and if that was the first time he had been there, it may be that you would find that the fact that the boardwalk was there was not sufficient notice to him that he must not go across the other way over these spaces. These spaces were none of them glazed as we understand now. The plan offered in evidence indicates that all but two of them shown on the plan were glazed, but it turns out that none of them were glazed, and they were covered with cheese cloth in a business precaution to protect the lower part of the building in a certain way, in order that certain varnishing or painting might be done there in an atmosphere that was proper for such work.

The Messrs. Cramp put up that building and they constructed that flooring and passageway that I have described to you. Now the question for you to determine is whether they furnished in this manner a safe place, a reasonably safe place, for Mr. Metzger to work in, and in order to answer that question you will bear certain points in mind. It is conceded that they put the running way there thirty inches wide, and that had he used that running way the accident would not have happened. It is conceded that the spaces for light that I have described to you were then empty and covered with cheese cloth, and were not safe for use in walking. It is also conceded that they were none of them glazed

but that they were all covered, as I have already said to you, and it would be your right to infer (but I leave it to you) that cheese cloth is a slim fabric, almost unsubstantial, and not capable of holding the weight of a human being. It is conceded, too, that Cramps had put a guard-rail along the running way on either side, so as to protect a person using that running way from going inadvertently over to either side falling over on the glass or into the holes.

Now you have that condition of things. This guard you find was at the time of the accident down. It had been removed, and one of the witnesses has testified to you where he saw it lying after the accident. If you find these to be the facts, then you may find evidence of negligence in the defendants for which they should answer to the plaintiff in this case, unless in addition to these facts you find that Mr. Metzger was careless as he entered upon that work. He appears to have reached that floor way, to have entered upon this space immediately in front of the running way. If he had taken that running way and gone across on it the accident would not have happened. Was it his duty under those circumstances to select that running way and not to step into this open space through the cheese cloth that was there? It has been said to you by one of the witnesses that that cheese cloth was sagging, was not drawn taut, and that there was an indication around the edge of it of the framework there which it covered. Was it the duty of Mr. Metzger to look about him and to determine that it was not caution to avoid the running way and do as he did? If you find that to be so then you will find that there was provided by these defendants a reasonably safe passageway to go across, and that by reason of Mr. Metzger's inadvertence or want of attention he hastily stepped on the wrong place, avoiding that passageway and so incurring the damage. That would be what in law is called contribu-

tory negligence, and it would preclude your finding a verdict against the defendants.

Verdict and judgment for plaintiff for $3,500. Defendant appealed.

*Error assigned* was in refusing binding instructions for defendant.

*W. W. Smithers,* for appellant.—The defendant had discharged all the duty he owed to the decedent: Johnston v. Ott, 155 Pa. 17; Newingham v. Blair Co., 232 Pa. 511; Staebler v. Warren-Ehret Co., 223 Pa. 129; Schley v. R. R. Co., 227 Pa. 494; Schneider v. Quartz Co., 220 Pa. 548; Coleman v. Keenan, 223 Pa. 29.

*Michael Francis Doyle,* for appellee.—The liability of the employer himself when a subcontractor, for injuries sustained by his employees, has been held in this State to depend upon whether or not the place at which the work was being done and the injury sustained was under the control of the subcontractor or of some third person at the time of the accident, the determining factor in fixing the liability being the control of the premises: Anderson v. Oliver, 138 Pa. 156; Connelly v. Faith, 190 Pa. 553; Sharpley v. Wright, 205 Pa. 253; Moore v. B. F. Sturtevant Co., 228 Pa. 399; Johnston v. Ott, 155 Pa. 17; Newingham v. Blair Co., 232 Pa. 511; Foster v. Steel Co. 216 Pa. 279; Hoffner v. Prettyman, 6 Pa. Super. Ct. 20; Clegg v. Steel Casting Co., 34 Pa. Super. Ct. 63; Husvar v. R. R. Co., 232 Pa. 278; Alexander v. Steel Co., 189 Pa. 582.

OPINION BY MR. JUSTICE ELKIN, February 12, 1912:

This suit was brought to recover damages for injuries resulting in the death of the husband of appellee by reason of the alleged negligence of appellant. At the trial all questions of fact upon which the right to

recover depended were submitted to the jury and there is no assignment of error as to the manner of the submission.  Binding instructions in favor of the defendant were asked and refused, and subsequently a motion for judgment non obstante veredicto upon the whole record was filed and overruled.  Appellant contends that he had discharged every duty owed decedent and that the evidence did not warrant a submission of the case to the jury.  The two assignments of error raise this single question.  If the undisputed facts were as stated in the argument of counsel for appellant it would have been error to submit the case to the jury, but we do not so read or understand the testimony.  The material facts were in dispute and this raised an issue which it was the province of the jury to determine.  It is argued for appellant that reasonable care was all that was required of him and we agree that this was the proper measure of his duty, but whether he exercised reasonable care under the circumstances was a question of fact for the jury.  The place was dangerous and must have been so regarded by the general contractor because he had undertaken to provide a measure of safety by the erection of a guard rail at the place where the accident occurred.  At the time of the accident the guard rail was missing; it had been removed, and as a result of this removal, decedent no doubt was misled as to the real conditions.  It is contended that it was not the duty of the contractor to follow the employees of a subcontractor around in the prosecution of their work and give notice of every transitory peril.  As a general proposition of law this is true, but we are not prepared to say that the negligence complained of comes within the rule of our cases relating to transitory dangers.  It was the duty of the contractor to provide a reasonable safe place to work, not only for his own employees, but for the employees of a subcontractor, who were engaged in the general prosecution of the work.  There may be, and no doubt there are, cases in which a general con-

tractor is not required to exercise the same degree of care for the protection of the employees of a subcontractor as for his own, but no such question arises in the case at bar. The guard rail would in all probability have prevented the accident, and whether appellant was negligent in removing it without notice to those employees whose duties required them to work at that particular place, was under all the circumstances a question of fact for the jury. The unglazed sash frames covered with cheese-cloth proved to be a veritable death trap and we cannot escape the conviction that it was the duty of the contractor to properly guard such a dangerous place as a protection to workmen necessarily engaged in the performance of their duties. At least this was a question for the jury under the circumstances. We cannot agree that the decedent assumed the risk as an incident of his contract of employment, or that he was so clearly guilty of contributory negligence as to require that the court should so declare as a matter of law. The negligence of the defendant as well as the alleged contributory negligence of the decedent were questions of fact for the jury. We find nothing in the record to warrant a reversal.

Judgment affirmed.