ESTEVEN CIACCI *v.* RALPH E. WOOLLEY.

No. 2162.

ARGUED OCTOBER 12, 1934.                    DECIDED DECEMBER 8, 1934.

COKE, C. J., BANKS AND PARSONS, JJ.

248

OPINION OF THE COURT BY PARSONS, J.

This is an action for damages for injury to the plaintiff alleged to have been proximately caused by the negligence of defendant, a building contractor, in the faulty construction of a scaffolding upon which the plaintiff, a plasterer, was working at the time he received said injury. Verdict and judgment in the trial court were for the plaintiff and the case is before us upon the defendant's bill of exceptions. The bill contains fifteen exceptions, one of which, the eighth, has been waived.

Exception one is to the overruling of defendant's demurrer to plaintiff's first and second amended complaints. The record before us shows a demurrer to plaintiff's

amended complaint filed February 1, 1934, a minute order overruling the same, an exception thereto noted by the defendant and an order allowing the defendant ten days within which to answer. Defendant's answer, a general denial, was filed February 8, 1934. By permission of the court a second amended complaint was filed April 5, 1934, subject to defendant's demurrer and answer to the first amended complaint.

The plaintiff's second amended complaint alleges in effect and among other things that on or about January 1, 1932, the defendant, a general contractor, entered into a contract with S. H. Kress & Company, a foreign corporation, for the construction of an addition or enlargement of its store premises at No. 1117 Fort Street, Honolulu; that in order to complete said contract in accordance with the plans and specifications therefor, certain plastering work was required to be done on said structure by defendant; that defendant entered into a subcontract with one George F. Larsen to furnish the material and labor necessary to do said plastering, and plaintiff, a plasterer by trade, was employed by the said George F. Larsen, together with other workmen of like craft, to do said plastering; that in the construction of said building it was necessary for defendant to construct and he did construct certain scaffolding for the use of the workmen working on said structure, including the plaintiff, which said scaffolding plaintiff was required to use in his work as a plasterer; that said scaffolding was unsafe and insecure and was constructed in a negligent way and without regard to the safety of plaintiff and other workmen using said scaffolding; that the plaintiff believing said scaffolding had been constructed in a safe and workmanlike manner and relying on the safety of the same and being obliged to use said scaffolding and having no choice but to use the same was, on the 22d day of July, 1932, working on said scaf-

folding plastering the ceiling of said structure, when without warning and without negligence on plaintiff's part the flooring of said scaffolding upon which plaintiff was standing at said time suddenly gave way and in the ensuing fall and efforts to save himself from striking the floor below plaintiff grasped a cornice of said building and in doing so suffered severe and painful injuries to his shoulder, dislocating the same, wrenching the muscles and tendons thereof and causing him great pain and anguish; that the injuries received by the plaintiff as aforesaid were proximately caused by the negligence and carelessness of the defendant as aforesaid in the construction of said scaffolding and his disregard of the safety of plaintiff while engaged as a workman upon said scaffolding as aforesaid. Then follows a more detailed description of plaintiff's injuries, an allegation that they are not compensable under the Workmen's Compensation Act by reason of the fact that plaintiff was in receipt of wages in excess of thirty-six dollars a week, allegations of general and special *ad damnum* in the aggregate sum of $9300 and prayer for judgment.

The grounds of demurrer relied upon by defendant as set forth in his opening brief are as follows: "(a)  That it does not appear from said complaint that defendant was under any duty under his subcontract with George F. Larsen to construct the scaffolding referred to in said complaint or any scaffolding for the use of employees of said Larsen;  (b)  That it does not appear from said complaint that defendant intended the said scaffolding erected by him for the use of plaintiff;  (c)  That it does not appear from said complaint that defendant knew or should have known that said scaffolding would be used by plaintiff;  (d)  That there are no facts alleged in said complaint sufficient to show wherein defendant owed any duty of care to plaintiff."  These grounds do not require lengthy

consideration. They were addressed to the first amended complaint and are not wholly applicable to the second amended complaint which amplifies the averments of the first. The record does not show any ruling upon them as applied to the second amended complaint and consequently no exception with reference to them subsequent to the exception to the order overruling the demurrer to the first amended complaint. Assuming, but not deciding, that the former ruling overruling the demurrer and exception thereto now applies to the second amended complaint—the said grounds are disposed of as follows: As to ground (a), the allegation of the complaint (in its context) of necessity of construction and fact of construction of scaffolding by defendant is a sufficient allegation of defendant's duty in the premises without setting forth specifically that said necessity arose out of contract with George F. Larsen. Under it proof that the duty arose under such contract was properly offered and admitted without objection; and allegation and proof are sufficient in this respect to sustain the verdict and judgment.

Ground (b) is negatived by the recitals herein of the allegations of the second amended complaint. Ground (c) is not sufficient in law to sustain defendant's demurrer. In the circumstances herein recited no averment that defendant knew or should have known that said scaffolding would be used by plaintiff was required. The averment above recited as to the necessity and fact of the erection by the defendant of the scaffolding for the use of the subcontractor's workmen, including the plaintiff, in its above recited context was sufficient in the premises.

The exact points relied upon by the defendant in ground (d) "that no facts are alleged to show defendant owed a duty toward plaintiff, with reference to the safety of the scaffolding" are not set forth in the argument of exception one in the brief. The allegations as to the con-

tractor's undertaking and construction for the purposes above named and in the above recited circumstances sufficiently show a duty on his part to exercise ordinary care to provide for the workmen of his subcontractor, including the plaintiff, a reasonably safe place in which to work. *Metzger* v. *Cramp Co.*, 235 Pa. 17, 83 Atl. 590; *Steele* v. *Grahl-Peterson*, 135 Ia. 418, 109 N. W. 882; *Pettingill* v. *Porter & Son*, 219 Mass. 347; *Bright* v. *Barnett & Record Co.*, 88 Wis. 299.

Defendant's exception two is to the order of the trial court denying defendant's motion, made at the conclusion of the opening statement to the jury by plaintiff's counsel, that "plaintiff's complaint be dismissed." Near the close of his opening statement counsel for plaintiff said: "We will show you by the evidence * * * that the plaintiff was entirely free of any blame or any contributory negligence * * *; that the entire accident here falls in the class of accidents described in the law books as *res ipsa loquitur*, that is, the thing speaks for itself, like a telephone pole falling on a pedestrian or a stairway collapsing, and we probably won't be able to bring you direct evidence of the particular thing that happened, but we will ask you upon the evidence that is produced to say to yourselves that it could not have happened in the normal course of events. Something was wrong with the scaffolding in some way and it gave way, injuring this workman." Defendant urges that this statement, taken in connection with the statement of evidence to be offered, showed affirmatively that the evidence would be insufficient to entitle plaintiff to relief in the present action; and to support his position quotes from a recent decision of the Supreme Court of the United States as follows: "There is no question as to the power of the trial court to direct a verdict for the defendant upon the opening statement of plaintiff's counsel where that statement establishes that the plaintiff

has no right to recover. The power of the court to act upon facts conceded by counsel is as plain as its power to act upon evidence produced. * * * The exercise of this power in a proper case is not only not objectionable, but is convenient in saving time and expense by shortening trials." The case thus quoted by counsel, entitled *Best* v. *District of Columbia,* was decided March 5, 1934, and is now reported in 291 U. S. 411. It reversed on *certiorari* the judgment of the court of appeals of the District of Columbia, which affirmed a judgment of the trial court entered upon a directed verdict in an action for death by drowning of a child who had fallen through a hole in a wharf. The death was alleged to have been caused by negligence on the part of the defendant. The verdict was directed for the defendant at the close of the opening statement by counsel for plaintiff. Counsel for respondent argued that "there was a complete failure to offer proof of the following essential facts: that the wharf could be seen from the public space; that the child was attracted by the presence of the wharf, or of anything upon it; hidden danger there; prior accidents to children; invitation or permission to children to enter or play." Immediately following the portion of the opinion of the United States Supreme Court by Mr. Chief Justice Hughes, quoted in defendant's brief hereinabove set forth, referring to the power of the trial court to direct a verdict in certain named circumstances, the Chief Justice continued: "But the power is not properly exercised if the opening statement leaves doubt as to the facts or permits conflicting inferences. Where uncertainty arises either from a conflict of testimony or because, the facts being undisputed, fair-minded men may honestly draw different conclusions from them, the question is not one of law but of fact to be settled by the jury. * * * The opening statement of counsel is ordinarily intended to do no more than to inform

the jury in a general way of the nature of the action and defense so that they may better be prepared to understand the evidence. 'If a doubt exists,' said the court in the *Oscanyan* case, *supra*, 'as to the statement of counsel, the court will withhold its directions, as where the evidence is conflicting, and leave the matter to the determination of the jury.' Plaintiff is entitled to the benefit of all inferences that may be drawn from his counsel's statement. To warrant the court in directing a verdict for defendant upon that statement, it is not enough that the statement be lacking in definiteness but it must clearly appear, after resolving all doubts in plaintiff's favor, that no cause of action exists. * * * The controversy in this case largely turns upon a difference of view as to the inferences to be drawn from the opening statement. * * * In view of the fair import of the opening statement, it was error for the trial court to refuse to take testimony, and to direct a verdict for respondent." In the instant case in view of the fair import of plaintiff's offer to prove injury and damage to himself at the time and place and substantially in the manner and circumstances alleged in his second amended complaint hereinabove recited there was no error on the part of the trial court in refusing to grant defendant's motion for dismissal at the conclusion of plaintiff's opening statement. The doctrine of *res ipsa loquitur* as applied to the proof and consequently as applied to counsel's offer of proof will be discussed later in this opinion.

Exception three is to an order of the court overruling defendant's objection to a question asked plaintiff by his counsel on direct examination, said objection being on the ground that the question was leading. The question was: "And at the time of this accident you were exercising due care?" The better practice, perhaps, would have been to sustain defendant's objection. However that may

be, the propriety of permitting leading questions rests in the discretion of the trial court and the allowance of such a question is not reversible error unless it is shown that the discretion has been abused to the prejudice of the appellant. See 5 Jones on Evidence (2d Ed.), §§ 2331, 2332 and cases cited in footnotes 19, 20. In the instant case the witness was cross-examined and testified as to the acts upon which his answer to the above-quoted question was predicated and no prejudice was shown; nor do we find any abuse of discretion.

Defendant's exceptions four and six are to the court's orders denying two motions for a nonsuit, the first after the plaintiff had rested, subject to the right to reopen to call one more witness and the second after said last-named witness had been called and examined. The first motion was based upon the ground that the plaintiff "had failed to show any negligence on the part of the defendant in the construction of the scaffolding," and the second upon the ground "that no evidence of negligence had been produced by the plaintiff against the defendant." Upon denial by the court of defendant's motions for nonsuit, plaintiff did not rest but put on evidence including that of Ching Pui, defendant's carpenter-foreman, with reference to the details of the construction for Mr. Woolley by his employees of the scaffolding above referred to. Ching Pui, when questioned as to his examination of the scaffolding following the accident, testified: "* * * it's my duty to go up there and take a look, see if this—all the construction work was all right, and everything was all right. I had been up there a couple of times a day." After the defendant had rested plaintiff, in rebuttal of certain testimony introduced by defendant, called one Cyprian Silva, who testified among other things that on the afternoon of July 26, 1932, he was working on the above-described scaffolding with the plaintiff when "the plank fell over, fell out of the scaffold;

the scaffold being wabbly it wasn't very strong and kind of shook the plank off, and he fell over on the side of the wall." On cross-examination the same witness was asked with regard to the movement of the scaffold: "What was the way it felt? Describe it," and answered: "Well, enough to shake, and feel it wabbling. It wasn't bad, but enough to drive any plank off this place." This evidence was sufficient to go to the jury on the question of safe or defective construction of the scaffolding and upon that of where laid the duty of inspection thereafter. If this and other evidence introduced after plaintiff had rested, taken together with evidence introduced for the plaintiff, made out a *prima facie* case for the plaintiff, whatever error the court may have committed in overruling defendant's motions for nonsuit was cured. See *Carter* v. *Wing Chong Wai Co.,* 12 Haw. 291, 296.

In answer to defendant's claim of lack of proof of negligence on his part plaintiff invokes the doctrine of *res ipsa loquitur*. This doctrine is defined in an excerpt from the article on negligence in 20 R. C. L., p. 187, quoted approvingly by this court in *Morgan* v. *Yamada,* 26 Haw. 17, 24, as follows: "More precisely the doctrine *res ipsa loquitur* asserts that whenever a thing that produced an injury is shown to have been under the control and management of the defendant and the occurrence is such as in the ordinary course of events does not happen if due care has been exercised, the fact of the injury itself will be deemed to afford sufficient evidence to support a recovery in the absence of any explanation by the defendant tending to show that the injury was not due to his want of care. * * * The presumption of negligence herein considered is of course a rebuttable presumption. It imports merely that the plaintiff has made out a *prima facie* case which entitles him to a favorable finding unless the defendant introduces evidence to meet and offset its effect. And of

course where all the facts attending the injury are disclosed by the evidence, and nothing is left to inference, no presumption can be indulged—the doctrine *res ipsa loquitur* has no application." In the case last above cited, on page 26, the foregoing principles are set forth in other terms in a quotation from Sherman and Redfield on Negligence, Sec. 59, as follows: "In many cases the maxim *res ipsa loquitur* applies. The affair speaks for itself. It is not that in every case negligence can be assumed from the mere fact of the accident and of injury, but in these cases the surrounding circumstances which are necessarily brought into view by showing how the accident occurred contain without further proof sufficient evidence of the defendant's duty and of his negligence to perform it. The fact of the casualty and the attendant circumstances may themselves furnish all the proof of negligence that the injured person is able to offer or that it is necessary to offer."

Adopting the language of *McCloskey* v. *Koplar* (Mo.), 46 S. W. (2d) 557, 560, with respect to the doctrine invoked as above: "* * * the requirement that the instrumentality be under the management and control of the defendant does not mean, or is not limited to, actual physical control, but refers rather to the right of control at the time the negligence was committed." As to defendant's contention that the doctrine cannot apply because of the possibility that the negligence of some person other than the defendant caused the plank in the flooring to fall the case of *Van Horn* v. *Pacific Refining & Roofing Co.*, 27 Cal. App. 105, 108, 109, is in point. In that case the plaintiff, an employee of an independent contractor, was injured in the course of his work by the blowing off of a cap which had theretofore been insecurely placed upon a steam pipe by an employee of defendant. Said the court: "There are only three possible ways by which its dislocation could

be explained; either it was defectively constructed; or negligently and insufficiently affixed to the pipe; or else it had been tampered with and loosened to the point of danger under pressure by some one other than the defendant's employees. In either of the first two of these possibilities the defendant would be liable. But the appellant contends that because the third possibility exists the doctrine of *res ipsa loquitur* cannot be given application. In support of this contention counsel for the appellant argues that the mere fact that persons other than the defendant or its employees were working in and about the building, and had access to the particular floor where this steam-pipe was located, would be sufficient to prevent the application of the rule, because some one or other of these might possibly have so struck or tampered with this pipe as to have caused the loosening of its cap to such an extent that it would be liable to blow off at any moment under pressure. We think this argument, unsustained as it is by any semblance of evidence or proof tending to show such interference with this pipe or cap, carries the possibilities in cases of this kind entirely too far. To give it application would be to practically eliminate the doctrine of *res ipsa loquitur* from the law, since it would be difficult to imagine a case where the appliance causing the accident would be so immured as to make it impossible for any person but its owner or operator to have access to it." The case last above cited is quoted with approval and followed in *Wright* v. *Southern Counties Gas Co.,* 102 Cal. App. 656. In the instant case the evidence hereinabove referred to was sufficient to go to the jury upon the question of the defendant's negligence in the premises and exceptions four and six are without merit.

Defendant's exception five is to the trial court's refusal to strike the answer of defendant's witness Fromhertz to a question asked on cross-examination, and objected to, on

the ground that said question presupposed something not in the evidence—to wit, that one Silva was working on the scaffolding at the time of the accident. Witness's answer was: "I don't know; I never heard." In view of the answer and in view of the fact that there was later testimony, including that of Silva himself, hereinabove referred to, that Silva was working on the scaffolding at said time, and no prejudice to defendant appearing, the error, if any, set forth in exception five is harmless and therefore not subject to reversal.

Defendant's exception number seven is to the court's instruction number one, given at the request of the plaintiff. The two sentences of said instruction objected to as segregated in defendant's opening brief are as follows: 1. "I instruct you, gentlemen of the jury, that under the law an employer is required to furnish his employee with a safe place to work and he is liable for his employee's injuries if such employee is injured as a result of the employer's failure to furnish such safe place * * * ." 2. "In this particular case, if you believe from the evidence that the defendant built or constructed the scaffolding for the use of the plasterers, then as a matter of law the defendant would be liable for injuries received by a plasterer which were due to or proximately caused by a defective, unsafe or insecure scaffolding * * * ." Defendant avers that the first of said two sentences "is an incorrect statement of the law pertaining to the liability of a contractor furnishing appliances to a subcontractor for use of the subcontractor and his employees for the reason that under the circumstances of this case defendant was obliged merely to use reasonable care to furnish the subcontractor with a reasonably safe scaffolding;" and argues that there is error in the second part above quoted for four reasons, namely: "(a) In that the language thereof places the burden of an insurer of plaintiff's safety upon defendant,

which burden the defendant was not required to bear under the law;  (b)   In that the instruction places the burden of liability on defendant through an unsafe condition of the scaffolding through any cause whatsoever, whether or not same could come to the attention of defendant by the exercise of reasonable care in inspecting same;  (c)   In that the instruction assumes or leaves to the jury the right to assume that the scaffolding furnished by defendant was defective when turned over to the subcontractor;  (d) In that it assumes that there was a duty resting upon defendant to maintain the scaffolding and keep same in good condition after same was turned over to the subcontractor."   The instruction, standing alone, does not contain a complete statement of facts necessary to be found by the jury in order to show negligence on the part of defendant. However, instruction number one was supplemented by instruction number fourteen, given at the request of the defendant as follows:  "I instruct you that as a matter of law the defendant was not obliged to furnish plaintiff with an absolutely safe scaffolding.   His duty was fulfilled if he used reasonable care to furnish plaintiff with a reasonably safe scaffolding.   I further instruct you that he was not an insurer of the safety of plaintiff while plaintiff was working upon the scaffolding furnished by him.   Accordingly, if you find from a preponderance of the evidence that defendant used reasonable care in providing a reasonably safe scaffolding for plaintiff to work upon, then your verdict must be for defendant."   Plaintiff at no time claimed that defendant's liability was that of an insurer and that point was at no time at issue in the case.   The two instructions taken together cover the subject without uncertainty so that the jury could not have been misled in the premises. The rule applicable is thus laid down in 1 Randall's Instructions to Juries, §533:  "In determining the sufficiency of a particular instruction, or part of a charge, it is not

to be considered apart from its context, or the rest of the charge. Both in civil and in criminal cases the instructions of the court must be read together as one connected whole, to ascertain whether they correctly declare the law. The omissions or inaccuracies of one instruction may be cured by the contents of the other instructions, or some of them, and if, when the instructions of the court are considered as a whole, they correctly state the law and are not inconsistent or misleading, the fact that a particular instruction or isolated paragraph may be objectionable, as inaccurate or misleading, will not constitute ground for reversal." See also *Wilson* v. *von Holt*, 25 Haw. 529.

This disposes of defendant's objection to the part of said instruction first above quoted and to objections designated (a) and (b) to the second part thereof. Later in defendant's brief grounds (c) and (d) are more clearly stated as follows: "Furthermore, the instruction is erroneous in that it assumes or leaves to the jury the right to assume that the scaffolding was defective when turned over to the subcontractor. It also assumes that there was a duty resting upon the defendant to maintain the scaffolding and keep the same in good condition. There is nothing in the evidence to authorize any of these assumptions. The record is silent as to when the scaffolding was turned over by the defendant to the subcontractor. The evidence does show, however, that the defendant's sole duty under his subcontract with Larsen was to furnish the scaffolding and not to maintain the same. He was accordingly under no duty to inspect the scaffolding as to its condition after he had turned same over to Larsen and it was accepted by Larsen." Recital of the evidence beyond that contained in an earlier part of this opinion is not deemed necessary. For reasons hereinabove set forth the evidence thus recited is sufficient to justify the submission to the jury of the question of faulty construction of the scaffolding in the

first instance. Evidence sufficient to go to the jury as to the duty of maintenance has already been commented upon. We find no merit in defendant's exception seven.

Defendant's exception nine is to instruction number four given at the request of the plaintiff. The instruction defines to the jury the phrase *"res ipsa loquitur,"* consistently with what has been herein set forth in the discussion of exceptions four and six and concludes: ·"If you believe from the evidence that the accident complained of in this case falls within the definition of accidents defined· in the phrase *res ipsa loquitur*, I instruct you that it is not necessary for plaintiff to prove negligence on the part of defendant by direct evidence of such negligence." This instruction, as hereinabove decided, is a correct statement of the law.

Defendant's exception number ten is to instruction number six given at plaintiff's request, submitting to the jury the question of defendant's negligence in the premises. Read in connection with instruction number four as to the doctrine of *res ipsa loquitur* the instruction was proper for reasons discussed in the foregoing paragraph and in the consideration of exceptions four and six.

Defendant's exceptions eleven, twelve and thirteen are to the refusal of the court to give defendant's request for instructions numbers thirteen, fifteen and sixteen, respectively. Request number thirteen was as to the plaintiff's duty of care in the premises; number fifteen as to assumption of risk; number sixteen as to the duty of defendant to exercise reasonable care only and not to act as an insurer. While not in identical terms, defendant's request number thirteen was substantially covered by the court's instructions numbers eight and eleven, defendant's request number fifteen by the court's number eleven and defendant's request number sixteen by the court's instruction number fourteen, hereinbefore discussed; said numbers eight, elev-

en and fourteen having been given at defendant's request. Quoting from the syllabus of *Territory* v. *Honda,* 31 Haw. 913, and applying the same to the instant case: "The refusal to give an instruction is not prejudicial error, although it states a correct principle of law, when another instruction stating substantially the same principle is given." See also *Territory* v. *Marks,* 25 Haw. 219; *Territory* v. *Martins,* 28 Haw. 187; *Territory* v. *Leong Kun,* 29 Haw. 90.

Defendant's exception fourteen is to the verdict of the jury and raises no point not hereinabove decided except the point that the defendant's evidence was sufficient to overcome any inference of negligence which the jury might have drawn under the doctrine of *res ipsa loquitur,* assuming that doctrine would have been applicable. The defendant's evidence as to the condition of the scaffolding prior to the accident and in other essential details conflicted with evidence of the plaintiff. That being true the weight of the inference as well as the weight of defendant's evidence was for the determination of the jury. See 45 C. J., article on negligence, § 784, pp. 1223, 1224, and cases cited in footnote 64.

Defendant's exception number fifteen alleges error in the court's denial of defendant's motion for a new trial. All the grounds of defendant's motion, with one exception, have hereinabove been disposed of. The one exception last above referred to dealt with the court's striking certain words from defendant's requested instruction number eight. No exception to the striking of the words referred to or to the giving of the instruction as modified is disclosed by the record or averred by the defendant. No reversible error therefore is presented under exception fifteen. See *Brown* v. *Bannister,* 14 Haw. 34, 37.

Exceptions overruled.

*E. J. Botts* (also on the brief) for plaintiff.

*W. R. Ouderkirk* (also on the briefs) for defendant.