452 A.2d 1328

COMMONWEALTH of Pennsylvania

v.

Harvey SILVER, Appellant.

Supreme Court of Pennsylvania.

Submitted Oct. 23, 1981.

Decided Sept. 28, 1982.

Reargument Denied Dec. 31, 1982.

230

John W. Packel, Chief, Appeals Div., Asst. Public Defender, Leonard Sosnov, Philadelphia, for appellant.

Robert B. Lawler, Chief, Appeals Div., Asst. Dist. Atty., Alan Sacks, Philadelphia, for appellee.

Before O'BRIEN, C. J., and ROBERTS, NIX, LARSEN, FLAHERTY, McDERMOTT and HUTCHINSON, JJ.

## OPINION

O'BRIEN, Chief Justice.

Appellant Harvey Silver was found guilty of rape, robbery, criminal conspiracy, and possession of instruments of crime [1] after a jury trial in the Philadelphia Court of Common Pleas. He was sentenced to two consecutive terms of two and one-half to five years on the rape and robbery convictions. On appeal the Superior Court affirmed the judgments of sentence.[2] This Court granted appellant's petition for allowance of appeal. For the reasons stated below we affirm the order of the Superior Court.[3]

The record establishes that at approximately 12:00 p. m. on January 6, 1976, appellant's twin brother Howard entered a West Philadelphia employment agency and requested a job application. Mrs. Lila Fox, the operator of the agency, was interviewing Mrs. Loretta Collier when Howard entered. Shortly thereafter, appellant entered the office, spoke briefly with Howard, and left. Appellant later reentered the agency, showed Mrs. Fox a gun under his coat, and then ordered her into the rear office where, after being forced to undress, she was blindfolded, bound, gagged, and raped twice. Mrs. Collier was robbed, and company checks and other items were stolen. Appellant and his brother were arrested in their West Philadelphia apartment at approximately 9:00 p. m. that evening.

1. 18 Pa.C.S. §§ 3121, 3701, 903, and 907, respectively.

2. *Commonwealth v. Silver,* 260 Pa.Super. 232, 393 A.2d 1239 (1978).

3. This case was reassigned to this writer on June 23, 1981.

The first issue raised in the instant appeal concerns the in-court identification of appellant made by the robbery victim, Mrs. Collier. Shortly after the arrest, the police placed appellant and his brother in a line-up of seven black males of similar age, height, weight, and complexion. Appellant was first and his brother sixth in line. Mrs. Fox, the rape victim, selected both brothers from the line-up; Mrs. Collier, however, identified only Howard. Mrs. Fox repeated her identifications at a preliminary hearing, at which Mrs. Collier again identified only appellant's brother. After a suppression hearing, the trial court ruled that the procedures employed at both the line-up and the preliminary hearing were impermissibly suggestive, and suppressed the identifications resulting therefrom.[4] The court went on to determine that there were independent bases for in-court identifications of both brothers by Mrs. Fox and of appellant's brother by Mrs. Collier. The court declined to rule on the admissibility of a possible in-court identification of appellant by Mrs. Collier. At trial Mrs. Collier identified both brothers.[5]

Appellant's argument relies on a strained interpretation of Pa.R.Crim.P. 323. He contends first that the trial court violated Pa.R.Crim.P. 323(h)[6] by permitting Mrs. Collier's

4. The suppression court reasoned that the line-up was impermissibly suggestive because "both defendants, who at this time had been known by the police and by the victims to be either brothers or twins, . . . had been in the same line-up." N.T. July 6, 1976 at 199. The record does not indicate whether appellant and his brother are identical or fraternal twins. The trial court observed that, although the brothers were similar in appearance, Harvey's complexion was darker than Howard's. In addition, both Mrs. Fox and a police officer noted that Harvey had bad teeth. The court suppressed Mrs. Collier's identification of Howard at the preliminary hearing because she had seen him at the defense table and heard the case called.

5. A plurality of a Superior Court panel held that the admission of the identification was at most harmless error under *Commonwealth v. Story*, 476 Pa. 391, 383 A.2d 155 (1978).

6. Pa.R.Crim.P. 323(h) provides:
 The Commonwealth shall have the burden of going forward with the evidence and of establishing that the challenged evidence was not obtained in violation of the defendant's rights. The defendant

in-court identification because the Commonwealth had not requested a ruling by the suppression court on the admissibility of such an identification, thus impliedly representing that the Commonwealth would not attempt to elicit an in-court identification of appellant by Mrs. Collier at trial. Appellant's second argument, also relying on Pa.R.Crim.P. 323(h), is that the admission of Mrs. Collier's identification was error because the Commonwealth failed to demonstrate by clear and convincing evidence at the suppression hearing that there would be an independent basis for that identification at trial. These claims are without merit.

■ There was no occasion for a pre-trial determination of the admissibility of Mrs. Collier's identification of appellant. Pa.R.Crim.P. 323 provides a single procedure for seeking the suppression of evidence alleged to have been obtained in violation of a defendant's rights. Because Mrs. Collier had not identified appellant prior to the suppression hearing, there was no evidence appellant could have moved to suppress, nor any for which an independent basis could have been shown. Thus, under Pa.R.Crim.P. 323, the suppression court properly declined to rule on the admissibility of a possible identification of appellant by Mrs. Collier at trial. Similarly, the Commonwealth was not required at the time of the hearing to establish an independent basis for such an identification. The fact that it did not do so, therefore, cannot be said to amount to an implied representation as to Mrs. Collier's testimony at trial. *Cf. Commonwealth v. Heacock,* 467 Pa. 214, 355 A.2d 828 (1976).

Compliance with Pa.R.Crim.P. 323 does not, of course, foreclose the possibility of a violation of due process not explicitly contemplated by that rule. Mrs. Collier was exposed to two identification procedures ruled impermissibly suggestive by the suppression court. It is the potential for misidentification such procedures may engender which offends due process. *Neil v. Biggers,* 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972); *Commonwealth v. Sexton,* 485

may testify at such hearing, and, if he does so, does not thereby waive his right to remain silent during trial.

Pa. 17, 400 A.2d 1289 (1979). It is possible that suggestive pre-trial procedures which do not produce an immediate identification of the suspect may be so suggestive as to taint an eventual identification. *See e.g. Foster v. California,* 394 U.S. 440, 89 S.Ct. 1127, 22 L.Ed.2d 402 (1969); *Commonwealth v. Fowler,* 466 Pa. 198, 352 A.2d 17 (1976) (plurality opinion). The instant record, however, does not present such a situation.

Reliability is the linchpin in determining the admissibility of an identification such as the one challenged herein. *Manson v. Brathwaite,* 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977). The controlling test of such reliability was announced by the United States Supreme Court in *Neil v. Biggers, supra.* As the *Manson* Court explained:

> The factors to be considered are set out in *Biggers.* 409 U.S. at 199–200 [, 93 S.Ct. at 382–383]. These include the opportunity to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of his prior description of the criminal, the level of certainty demonstrated at the confrontation, and the time between the crime and the confrontation. Against these factors is to be weighed the corrupting effect of the suggestive identification itself.

*Manson v. Brathwaite, supra,* 432 U.S. at 114, 97 S.Ct. at 2253, 53 L.Ed.2d at 154. In the instant case, the issue of reliability did not become ripe for consideration until Mrs. Collier identified appellant at trial. When this occurred, defense counsel immediately moved for a mistrial. The trial court denied that motion and a motion to suppress the identification. During a subsequent *in camera* discussion with counsel, however, the trial court made an on-the-record determination that Mrs. Collier's testimony at trial and the pre-trial suppression hearing, over which the same judge presided, established the existence of an independent basis for her in-court identification of appellant. Defense counsel had full opportunity to cross-examine Mrs. Collier on both occasions, and was permitted to argue the legal issues surrounding the identification during the *in camera* discussion.

For all practical purposes, therefore, a suppression hearing did take place.

Since the issue of admissibility was in fact litigated, the admission of the identification violated due process only if the trial court's conclusion that there was an independent basis for that identification is not supported by the record. *Commonwealth v. Davis,* 491 Pa. 363, 421 A.2d 179 (1980); *Commonwealth v. Webb,* 491 Pa. 329, 421 A.2d 161 (1980). Having reviewed Mrs. Collier's testimony, we are convinced that the trial court's determination is supported by ample evidence. Applying the *Biggers* test to that evidence, we discover the following: The employment agency was well-lighted. The witness sat within two to three feet of appellant for two to three minutes as he spoke with Mrs. Fox, the rape victim. While initially inattentive and unable to observe appellant from the front, Mrs. Collier became frightened and attentive when she saw appellant pull a gun from his coat and force Mrs. Fox into the rear office. Mrs. Collier further observed appellant as he reentered the main office. From the testimony describing the layout of the employment agency, it is clear that she would have had a frontal view of appellant as he walked from the door of the rear office toward his brother, who was standing near her. In addition, the description Mrs. Collier gave the police shortly after the crime, while lacking in detail, was accurate. She expressed certainty as to her in-court identification, and was able to distinguish appellant from his brother by their respective roles in the crime. Only the fact that the trial began six months after the date of the crime fails to support the reliability of the in-court identification.

Under the second prong of the *Biggers* test, we must then weigh the above evidence against the corrupting effect of the pre-trial exposures to which Mrs. Collier was exposed. The fact that neither pre-trial confrontation between Mrs. Collier and appellant gave rise to an identification is clearly relevant in assessing the suggestiveness of those confrontations. Further, it cannot be inferred from the mere fact that the same witness made an in-court identification that

those two brief exposures had a cumulative effect sufficient to trigger a delayed identification. We are not presented herein with a situation in which the witness is deliberately and repeatedly exposed to the suspect in circumstances which convey the message, "this is the man." *Cf. Foster v. California, supra; Commonwealth v. Fowler, supra.* In light of the above considerations, we are convinced that the evidence supporting the existence of an independent basis for Mrs. Collier's identification is of sufficient quality to outweigh the potential corrupting effect of the pre-trial confrontations.

■■■ The issue of Mrs. Collier's credibility, given her inability to identify appellant before trial, goes to the weight to be accorded her testimony rather than its admissibility. *E.g. Commonwealth v. Woodward,* 483 Pa. 1, 394 A.2d 508 (1978). The witness's earlier failures were brought out fully by defense counsel on cross-examination, and the trial court properly instructed the jury to receive her identification testimony with caution. *Commonwealth v. Kloiber,* 378 Pa. 412, 106 A.2d 820, *cert. denied,* 348 U.S. 875, 75 S.Ct. 112, 99 L.Ed. 688 (1954). Thus appellant was not unduly prejudiced by Mrs. Collier's identification.

Appellant next argues that the trial court erred in excluding as irrelevant the testimony of a police chemist that there were no semen stains on the undershorts seized from appellant after his arrest. The Superior Court plurality held that this claim, although preserved by written post-verdict motion in accordance with Pa.R.Crim.P. 1123(a), had been waived pursuant to Pa.R.A.P. 1925(b) because it was not set forth in appellant's statement of matters complained of on appeal. We agree with appellant that this was error.

In criminal cases, claims generally can be preserved for review only by the timely filing of written post-verdict motions. Pa.R.Crim.P. 1123(a); *Commonwealth v. Blair,* 460 Pa. 31, 331 A.2d 213 (1975).[7] In the instant appeal, appellant's trial counsel argued the admissibility of the chemist's

7. *See also* Pa.R.Crim.P. 1123(b).

testimony at side-bar, objected to the trial court's exclusion of the testimony, preserved the issue by post-verdict motion, and argued it at a post-verdict hearing. The trial court's opinion nonetheless excluded the claim from its discussion of the questions raised in post-verdict motions.

Pa.R.A.P. 1925 facilitates appellate review by requiring the trial court to supplement the record with an opinion addressing the merits of the issues to be raised on appeal. Pa.R.A.P. 1925(b) provides:

**(b) Direction to file statement of matter complained of.** If the lower court is uncertain as to the basis for the appeal, the lower court may by order direct the appellant forthwith to file of record in the lower court and serve on the trial judge a concise statement of the matters complained of on appeal. A failure to comply with such direction may be considered by the appellate court as a waiver of all objections to the order, ruling or other matter complained of.

The waiver provision of Rule 1925(b) is clearly discretionary. The statement provided for therein is intended to aid the trial court in the preparation of an opinion where the basis of an appeal is unclear after post-verdict motions have been disposed of. The waiver provision of the Rule is properly invoked only where failure to file a statement or omission from a statement of issues raised on appeal defeats effective appellate review. Mere omission from the statement of matter complained of on appeal of an issue preserved by post-verdict motion, argued before and disposed of by the trial court, and briefed on appeal, does not, in itself, defeat effective review of that issue. Accordingly, we will treat the issue as preserved for our review. We must therefore consider the relevancy of the proffered testimony.

As this Court stated in *Commonwealth v. Loomis,* 270 Pa. 254, 261, 113 A. 428, 430 (1921):

In a criminal case, a defendant cannot establish facts which awaken mere conjectures; his admissible proof

must be such as is calculated to fairly raise a doubt as to his connection with the transaction.

It is well established that

[w]henever the condition of a particular ... thing at a certain time is in question, evidence of its condition at a ... subsequent time is inadmissible, unless there is accompanying proof that it had not changed in the meantime.

*Commonwealth v. Mussoline,* 429 Pa. 464, 472, 240 A.2d 549, 552 (1968), *quoting Murray v. Siegal,* 413 Pa. 23, 29, 195 A.2d 790, 793 (1963). The police seized appellant's undershorts after his arrest approximately nine hours after the rape was committed. Appellant failed to establish at trial that the undershorts seized were the same ones he was wearing at the time of the crime, let alone that their condition had not changed during the nine hour interval. The trial court therefore did not abuse its discretion in excluding the chemist's testimony.

Appellant's final claim is that he is entitled to a new trial because of an allegedly improper communication between jurors and a court officer during jury deliberations. Appellant contends that the trial court's post-verdict colloquy with the jury established that at least two jurors heard the court officer say that defense counsel had little hope of an acquittal. The Superior Court plurality did not reach the merits of this claim, holding that it had not been preserved for review. Appellant further argues, therefore, that the Superior Court erred in so holding, or alternatively, that trial counsel was ineffective in failing to preserve the issue.

We must determine first whether the claim has been waived. After the verdict was recorded, the jury foreman informed the trial court that he believed a court officer had made a comment, heard by two jurors, which was prejudicial to the defendants. The court notified defense counsel of the foreman's statement, indicating that the court would conduct an on-the-record colloquy with the jury. Counsel agreed not to attend the colloquy, but were advised by letter of its results. The trial court indicated in the letter that a transcript of the colloquy would be prepared on request.

Appellant's trial counsel did not request a transcript until the day of the hearing on post-verdict motions, five months after the colloquy. At the hearing, the trial court denied appellant's motion to continue the hearing until a transcript of the colloquy could be made and appropriate supplemental post-verdict motions filed. The trial court informed counsel that their record was "protected," and that they could argue before the Superior Court any claim arising from the jury incident. A true assurance that the claim was preserved for review, however, does not appear to have been made. Without knowledge of what had taken place during the colloquy, defense counsel then made an oral motion asserting that the trial court had erred in not declaring a mistrial after the colloquy. No subsequent written post-verdict motion was filed.

In *Commonwealth v. Blair, supra,* this Court made it clear that claims of error not preserved by specific written post-verdict motion will not be considered on appeal. Pa.R. Crim.P. 1123. Further, Rule 1123(a) specifically requires that "[a]rgument shall be scheduled and heard promptly after such motions are filed, and only those issues raised and the grounds relied upon in the motions may be argued." We have consistently held since *Blair* that oral motions considered and disposed of by the trial court will not preserve a claim for review. *Commonwealth v. Philpot,* 491 Pa. 598, 421 A.2d 1046 (1980); *Commonwealth v. Gamble,* 485 Pa. 418, 402 A.2d 1032 (1979); *Commonwealth v. Hagans,* 483 Pa. 415, 397 A.2d 412 (1979). The Superior Court therefore correctly held the instant claim waived.

 We must next consider whether the waiver of the jury claim amounted to ineffective assistance of counsel. In general, when an appellant raising the ineffective assistance of trial counsel is represented on appeal by the same counsel, the case must be remanded for the appointment of new counsel not associated with trial counsel except where ineffective assistance is clear on the face of the record. *Commonwealth v. Gardner,* 480 Pa. 7, 389 A.2d 58 (1978); *Commonwealth v. Patrick,* 477 Pa. 284, 383 A.2d 935 (1978);

*Commonwealth v. Fox,* 476 Pa. 475, 383 A.2d 199 (1978); *Commonwealth v. Sherard,* 477 Pa. 429, 384 A.2d 234 (1977); *Commonwealth v. Wright,* 473 Pa. 395, 374 A.2d 1272 (1977). In such circumstances it cannot be assumed that appellate counsel will provide the zealous advocacy to which the appellant is entitled. *Commonwealth v. Gardner, supra; Commonwealth v. Patrick, supra; Commonwealth v. Fox, supra.* The instant record does not clearly establish that trial counsel did not have a reasonable basis for failing to preserve the claim in question. It is well established, however, that trial counsel is not ineffective in failing to preserve a meritless claim. *Commonwealth v. Tarver,* 491 Pa. 253, 420 A.2d 438 (1980); *Commonwealth v. Wilkerson,* 490 Pa. 296, 416 A.2d 477 (1980); *Commonwealth v. Yocham,* 473 Pa. 445, 375 A.2d 325 (1977); *Commonwealth v. Hubbard,* 472 Pa. 259, 372 A.2d 687 (1977). We shall therefore consider the merits of the jury issue in order to evaluate the ineffectiveness claim.

█ Appellant argues that the trial court's colloquy with the jury established that, during jury deliberations, "at least two jurors heard a court officer say that the defense did not think they had much of a case or a chance for not guilty verdicts." Brief for Appellant at ii. In so arguing, appellant attempts to substitute his findings of fact for those of the trial court. That court determined after interviewing the parties alleged to have been involved that no such communication had taken place. Such a determination is supported by the record and thus is clearly within the discretion of the trial court. *See Commonwealth v. Garrison,* 443 Pa. 220, 279 A.2d 750 (1971); *Commonwealth v. Thompson,* 328 Pa. 27, 195 A. 115 (1937); *Commonwealth v. Edwards,* 318 Pa. 1, 178 A. 20 (1935); *Commonwealth v. Posavek,* 278 Pa.Super. 265, 420 A.2d 532 (1980).

█ In some circumstances contact between jurors and third parties creates so great a potential for prejudice that no evidence of an actual prejudicial statement need be shown. *See e.g. Turner v. Louisiana,* 379 U.S. 466, 85 S.Ct. 546, 13 L.Ed.2d 424 (1965); *Commonwealth v. Stewart,* 449

Pa. 50, 295 A.2d 303 (1972), *cert. denied,* 417 U.S. 949, 94 S.Ct. 3078, 41 L.Ed.2d 670 (1974). In general, however, there must be evidence that a statement prejudicial to the defendant was in fact made. *Commonwealth v. Sero,* 478 Pa. 440, 387 A.2d 63 (1978); *Commonwealth v. Santiago,* 456 Pa. 265, 318 A.2d 737 (1974); *Commonwealth v. Garrison, supra; Commonwealth v. Kravitz,* 400 Pa. 198, 161 A.2d 861 (1960), *cert. denied,* 365 U.S. 846, 81 S.Ct. 807, 5 L.Ed.2d 811 (1961). *See Commonwealth v. Preston,* 488 Pa. 311, 318–319, 412 A.2d 524, 527 (1980) (dictum); Annot., 41 A.L.R.2d 227 (1955 & Later Case Serv. & Supp. 1982). We are convinced that the instant claim must satisfy an actual prejudice test. Having reviewed the transcript of the colloquy, we find no basis for disturbing the trial court's finding that no prejudicial statement had been made. The claim of prejudice is therefore without merit, and trial counsel was not ineffective in failing to preserve it.

The order of the Superior Court is affirmed.

NIX, J., filed a dissenting opinion in which FLAHERTY and HUTCHINSON, JJ., joined.

NIX, Justice, dissenting.

I cannot agree that the record before us establishes an independent basis for the in-court identification of Harvey Silver. To the contrary, I am convinced that as a matter of law it must be concluded that Mrs. Collier's observations during the incident did not provide the basis for her belated in-court identification. Moreover, I also reject the judgment of the plurality of the Superior Court Panel that the introduction of Mrs. Collier's in-court identification was harmless error. I therefore dissent.

Normally, an eyewitness to an event is competent to testify as to that occurrence, including the identification of the participants therein. *Cf. Commonwealth v. Davis,* 491 Pa. 363, 421 A.2d 179 (1980). Attacks upon the accuracy of the witness's account of the event raises questions of credibility to be resolved by the finder of fact. *Commonwealth v. Davis,* 466 Pa. 102, 351 A.2d 642 (1976); *Commonwealth v.*

*Tate,* 229 Pa.Super. 202, 323 A.2d 188 (1974). However, where the testimony of that witness has been tainted through impermissibly suggestive identification procedures, so as to likely lead to a misidentification, due process is offended if that identification is admitted at trial. *Foster v. California,* 394 U.S. 440, 89 S.Ct. 1127, 22 L.Ed.2d 402 (1969); *Simmons v. U. S.,* 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968). As the majority correctly noted, the exposure to suggestive influences alone is not the determining factor, but rather the reliability of the proffered identification as a result of that exposure is the linchpin. *Manson v. Brathwaite,* 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977); *see Neil v. Biggers,* 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972). The test for determining the reliability of such identification evidence was explicitly articulated by the U. S. Supreme Court in *Manson v. Brathwaite, supra:*

> The factors to be considered are set out in *Biggers.* 409 U.S. at 199–200, 93 S.Ct. 375, 34 L.Ed.2d 401. These include the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of his prior description of the criminal, the level of certainty demonstrated at the confrontation, and the time between the crime and the confrontation. Against these factors is to be weighed the corrupting effect of the suggestive identification itself.
>
> 432 U.S. at 114, 97 S.Ct. at 2253.

The concept of an independent basis in this context suggests that the witness' view of the criminal at the time of the crime was sufficient to assure that the subsequent identification flowed from that encounter itself and was not molded by later suggestive influences. *Neil v. Biggers, supra; Simmons v. U. S., supra; Commonwealth v. Fowler,* 466 Pa. 198, 352 A.2d 17 (1976) (plurality opinion). In such case the suggestive influences are irrelevant since the stimulus for the identification flows from the event and the probability of misidentification because of the suggestive influences is negated.

The majority premises its finding of an independent basis for the identification upon Mrs. Collier's opportunity to observe appellant during the incident. What the majority ignores is the obvious fact, that although she may have had the opportunity to have formed a clear picture of appellant from that exposure, she in fact did not. As noted in *Manson,* we must look not only to the *opportunity* to observe, but also to indication of the witness's attentiveness in making such an observation, and the accuracy of her perceptions from that observation.

Mrs. Collier testified that her exposure to the participant alleged to have been appellant was minimal. Although she was present during a period of from two to three minutes while the individual was speaking to Mrs. Fox, the proprietess of the establishment that was robbed, she was not paying attention to him and that his back was to her. When questioned by the police shortly after the incident, the only description she was able to offer was that he was a black male, a little shorter in height than she, and appeared to be wearing a black coat. The night of the incident Mrs. Collier attended a lineup in which appellant, his brother and five other individuals participated. At a time when Mrs. Collier's recall of the event should have been at its best, she was unable to identify appellant although she did identify his brother as one of the participants.

At the preliminary hearing, approximately three weeks later, Mrs. Collier was initially confused because of the similarity in appearance between appellant and his twin, but ultimately identified the twin brother again as a participant and failed to identify appellant. At both the lineup and the preliminary hearing Mrs. Fox identified appellant and his brother. It is also significant that although Mrs. Collier perceived the similarity in appearance between the brothers at the time of the preliminary hearing, she apparently did not recognize that resemblance from her exposure to the men at the time of the crime.

From the foregoing, it defies human experience to conclude that the in-court identification, months after the

event, resulted from Mrs. Collier's observation of appellant at the time of the robbery. Since the instant record reflects no prior association between appellant and Mrs. Collier before the robbery, it is obvious that the events following the robbery inspired the belated identification. It is equally fallacious to argue that the subsequent impermissibly suggestive procedures were irrelevant because they failed to produce an immediate identification.[1] A belated response to these impermissibly suggestive procedures provides, accepting the witness's sincerity, the only logical explanation for the in-court identification.

I also must reject the argument that the error was harmless beyond a reasonable doubt. *Commonwealth v. Story,* 476 Pa. 391, 383 A.2d 155 (1978). That Fox positively and unequivocally identified appellant as one of the perpetrators is not persuasive. At some point where there are a number of identifications of an accused by persons witnessing an event, the improper admission of one of those identifications may properly be treated as being harmless. However, such is not the case where there are only two eyewitness identifications. In spite of the Commonwealth's characterization of Mrs. Fox's identification evidence against appellant as positive and unequivocal, it was within the province of the finder of fact to accept or reject it. *Commonwealth v. Arms,* 489 Pa. 35, 413 A.2d 684 (1980); *Commonwealth v. Rose,* 463 Pa. 264, 344 A.2d 824 (1975). It cannot be said that the concurring testimony of Mrs. Collier did not come to play in the jury's acceptance of Mrs. Fox's identification of appellant. Moreover, the remaining evidence linking appellant to the offense was circumstantial in nature and not as conclusive as an eyewitness identification, if believed. It,

1. We note the majority vainly attempts to undercut the impermissibly suggestive quality of the lineup and preliminary hearing confrontations. However, by conceding the necessity of establishing the independent basis, they admit the impermissibly suggestiveness of the earlier confrontations. Moreover, we have recognized that confrontations wherein the accused is identified by his participation in the proceedings are highly suggestive. *Commonwealth v. Sexton,* 485 Pa. 17, 400 A.2d 1289 (1979).

246

therefore, cannot be said that the in-court identification did not contribute to the verdict and was therefore harmless.

Accordingly, I would reverse the Judgments of Sentence and award a new trial.

FLAHERTY and HUTCHINSON, JJ., joined in this opinion.