## Commonwealth *v.* Thompson, Appellant.

Argued September 27, 1937. Before KEPHART, C. J., SCHAFFER, MAXEY, DREW, LINN and STERN, JJ.

*Adam B. Shaffer,* with him *Harold L. Rothman,* for appellant.

*Louis L. Kaufman, Andrew T. Park,* District Attorney, and *Roy T. Clunk,* Assistant District Attorney, for appellee, were not heard.

OPINION BY MR. CHIEF JUSTICE KEPHART, November 12, 1937:

Joseph Thompson was sentenced to life imprisonment for the murder of a policeman. In his appeal to this court he assigns as error the substitution of a judge during the impanelling of the jury. The judge who had been assigned to try the case was unable to be present when it was called for trial, and, pending his arrival, another judge of the same court proceeded to impanel the jury. Eight jurors had been selected when the judge who had been delayed arrived in court, replaced the judge then on the bench, and, under objection, proceeded with the selection of the remaining jurors and the trial of the case.

The substitution of judges during a case should be carefully guarded and never permitted except under most extraordinary circumstances, and then only when no prejudice can result to the parties. Substitution

must be a matter of necessity, where the due administration of justice makes it imperative and without prejudice. The general rule prohibits entirely the substitution of a judge during the course of a criminal trial after a jury has been sworn and prior to a verdict. See *Freeman v. United States,* 227 Fed. 732 (C. C. A. 2d, 1915) ; *Com. v. Claney,* 113 Pa. Super. Ct. 439. Thus in *Durden v. People,* 192 Ill. 493, 61 N. E. 317 (1901) there was a substitution after the close of the testimony and while defendant's counsel was making his summation to the jury. This was held reversible error. While this precise question has never been passed on by this Court, the Superior Court, in *Com. v. Claney,* supra, a prosecution for misapplication of bank funds, held, though the trial judge became seriously ill following the closing address of counsel to the jury, the substitution of another judge to charge the jury was reversible error.

The theory of these cases has been that the only judge competent to instruct the jury is the one who heard the testimony, saw the demeanor of the witnesses, and had an opportunity to form an opinion as to their credibility and to know something of the "atmosphere" of the case. Another judge, without knowledge of such matters taking place during the trial and with no possibility of learning from the record all the circumstances attendant on the trial, is not qualified to properly charge the jury.

Some jurisdictions hold that even though the jury has been sworn there may be a substitution during the trial, if the defendant consents or does not object to the replacement. In *State v. McCray,* 189 Iowa 1239, substitution was permitted where the judge became sick and the defendant did not object to his withdrawal. The same was held in *People v. Henderson,* 28 Cal. 465, a homicide case, where a member of the judge's family became ill, necessitating a substitution. However, the safer course in the due administration of justice is to

follow the general rule prohibiting substitution after the jury is sworn and before the verdict.

At other stages of trial, a different rule exists. As to receipt of the verdict, some courts have taken the view that the function must be performed by the judge who presided at the trial. In *Hinman v. People*, 13 Hun. 266 (N. Y. Sup. Ct.), three judges presided at a trial for grand larceny, and only one judge was on the bench when the verdict was received; this was held to be reversible error. In England, under the common law, no judgment could be entered or execution ordered except by the judge who tried the case, but this rule has been changed by statute. In this State, since the receipt of the verdict is merely a routine matter and not the judgment of the court, another judge may receive the verdict as recorded, unless upon its receipt a motion or other matter develops which requires a personal knowledge of the case, in which event the trial judge should be present.

While statutory and decisional authority permits substitution to take place in a criminal case subsequent to the receipt of the verdict for the purpose of hearing motions and passing sentence,[1] in the absence of any like-

---

[1] *York v. State*, 121 S. W. 1070 (Ark. 1909) (murder; statutory exchange of circuits); *Meldrum v. U. S.*, 151 Fed. 177 (C. C. A. 9th, 1907) (forgery; trial judge deceased; statute involved); *Com. v. Gedzium*, 159 N. E. 51 (Mass. 1927) (murder; trial judge ill; statute involved); *People v. Gilbert*, 227 Mich. 538, 198 N. W. 971 (1924) (obtaining property by false pretenses; trial judge ill); *People v. Kasem*, 230 Mich. 278, 203 N. W. 135 (1925) (manslaughter; trial judge ill); *State v. Messino*, 30 S. W. (2d) 750 (Mo. 1930) (murder; trial judge deceased; implications in statute); *Hauser v. State*, 101 Neb. 834, 166 N. W. 245 (1917) (murder; trial judge deceased); *People v. Rao*, 271 N. Y. 98, 2 N. E. (2d) 275 (1936) (assault; trial judge deceased); *State v. Madry*, 93 S. C. 412, 76 S. E. 977 (1913) (larceny; trial judge resigned); *Pegalow v. State*, 20 Wis. 61 (1865) (murder; term of trial judge expired).

lihood of prejudice to the defendant *(Com. v. Dunleavy,* 16 Pa. Super. Ct. 380, and *Com. v. Miller,* 63 Pa. Super. Ct. 548) however, the practice of substituting judges to hear motions for a new trial, suspending or imposing sentence should be confined solely to cases of necessity. The parties to the litigation, which includes the Commonwealth, ordinarily possess an undoubted right to have the judge who heard the evidence and witnessed all that took place in the courtroom, help to decide the motion, pass judgment, suspend or impose sentence. The sentencing or suspension thereof of a person convicted of crime is a judicial act of serious import in the administration of justice, and can only be performed by the judge who tries the case, except in cases of imperative necessity. After the imposition of sentence by the court the prisoner becomes a charge upon the State and enters its custody. In no event should a substitution or replacement after verdict ever be permitted except under unavoidable circumstances, such as sickness, impossibility to act, or other substantial cause which would make the continuance of the trial judge's presence impossible. This is especially true in capital cases where life may be at stake.

We have discussed the question of substitution during and after trial because of the scope of the oral argument. In this case the change of judges, before the trial[2] and while the jury was being impanelled, did not cause the slightest harm to appellant. The examination of jurors under voir dire does not elicit any information that can be used in the trial of the case; such examination is merely for the purpose of securing a competent, fair and unprejudiced jury. That function can be properly performed by any judge; but when the jury is

---

[2] In *Com. v. Green,* 126 Pa. 531, it was held that another judge than the one who sent the bill to the grand jury could quash the bill.

selected and sworn, a different situation arises. The substitution was not reversible error.

As an incidental question, appellant also objects to the action of the court below on an alleged remark of one of the jurors showing prejudice. Witnesses were examined by the trial judge, and his findings on the question will be sustained here unless there is an abuse of discretion. The judge found the juror had not said, as charged, "You niggers keep quiet," but that he did remark to his fellow jurors in going out of the courtroom, "Keep quiet." The judge likewise found that no prejudice existed in the mind of the juror. This he might readily do from the juror's manner as evidenced in the testimony by his words in denial. The findings of the court below supported by evidence will not be disturbed. We reiterate what we said in *Hostetler v. Kniseley*, 322 Pa. 248, 253-255, that the impartiality and fairness of the jury is the very foundation of our system of administering justice. Jurors must so act as not to abase our historically proven method of settling disputes between an individual and the State, as well as those between individuals. A remark of the kind here alleged, under the circumstances testified to, unless qualified and explained, would evince a bias and prejudice fatal to conviction. Unexplained and unqualified, it would indicate disrespect, contempt and lack of regard for appellant's race as to render him not only an intolerant person, but an incompetent juror.

We have examined the record and it contains all the ingredients of murder in the first degree. Appellant's counsel does not question this.

The judgment is affirmed and the record is remitted for the purpose of carrying the sentence into effect.