548 F.2d 105
 UNITED STATES of America ex rel. Edison M. FIELDS, F-3262, Appellee,
v.
FITZPATRICK, F. Emmett, District Attorney for the
Commonwealth of Pennsylvania,
and
Jeffes, Glen R., Supt. State Corr. Inst., Dallas, Pennsylvania.
Appeal of COMMONWEALTH OF PENNSYLVANIA.
 No. 76-1494.
 United States Court of Appeals,
Third Circuit.
 Argued Oct. 21, 1976.
Decided Jan. 13, 1977.
 
 James A. Shellenberger, Asst. Dist. Atty., Bonnie Brigance Leadbetter, Steven H. Goldblatt, Abraham J. Gafni and F. Emmett Fitzpatrick, Philadelphia, Pa., for appellant.
 Leonard L. Ettinger, Philadelphia, Pa., for appellee.
 Before STALEY,* HUNTER and GARTH, Circuit Judges.
 JAMES HUNTER, III, Circuit Judge:
 
 
 1
 This appeal from the grant of a writ of habeas corpus raises the issue of whether there is a constitutional right to be sentenced by the same judge who presided at trial. The district court held there is such a right. We disagree, and vacate the grant of the writ.
 
 
 2
 * Edison M. Fields was arrested in Philadelphia, in September, 1972, on charges of rape and related offenses. Motions to suppress certain evidence were heard, in October, 1972, by Judge Ivins, in the Philadelphia Court of Common Pleas. A jury trial commenced on December 5, 1972; the jury returned verdicts of guilty on December 12, 1972.
 
 
 3
 Presiding at the trial was Judge Trembath, a retired judge in the 44th Judicial District of Pennsylvania (Wyoming and Sullivan Counties), who was sitting by special designation in Philadelphia. Sentencing did not take place immediately after the close of the trial, but was deferred pending the outcome of defendant's post-trial motions.
 
 
 4
 Sometime after the trial, Judge Trembath (the trial judge) returned to his home, in Tunkhannock, Pennsylvania, a small town some 168 miles northwest of Philadelphia. The court administrator, Mr. Carmody, wrote to Judge Trembath asking if he planned to return to Philadelphia for the sentencing of Fields and another, unrelated defendant. Judge Trembath responded that he did not intend to come to Philadelphia for the sentencing. In the same letter, he also summarized his reasons for preferring a long sentence for Fields, referring to the grave nature of the crime and the victim's tender age.[1]
 
 
 5
 Following the usual procedure, the administrative judge, Judge Doty, conducted the hearing on the post-trial motions. The exact nature of these motions is unclear from the record: the motion in arrest of judgment or for a new trial alleges the verdict was 1) against the evidence, 2) against the weight of the evidence, and 3) contrary to law. That hearing was not transcribed, so the only evidence in the record of more precise grounds is found in Judge Doty's opinion, filed August 21, 1973, denying those motions. The opinion discusses 1) sufficiency of the evidence, 2) leading questions, 3) failure to sequester a witness, and 4) the charge to the jury, finding no error.
 
 
 6
 Before imposing sentence, Judge Doty was able to review the record, including the pre-sentencing report and a psychiatric evaluation. In addition, Judge Doty discussed the sentencing of Fields with Judge Trembath, by telephone. Judge Doty's familiarity with the case is apparent from the transcript of the sentencing hearing. Fields was sentenced on June 5, 1973, to a term of ten to twenty years. The maximum sentence for rape, under 18 P.S. §§ 1103, 3121, is twenty years. At the end of his opinion denying the post-trial motions, Judge Doty declared:
 
 
 7
 As stated hereinabove, the trial judge in this case was the Hon. Robert W. Trembath, of the 44th Judicial District. At sentencing, no objection was made to the writer of this Opinion imposing sentence on June 5, 1973. Commonwealth v. Clay, (224) Pa.Super. (461, 307 A.2d 341).
 
 
 8
 The Superior Court of Pennsylvania affirmed the conviction, per curiam, without an opinion. Allocatur to the Supreme Court of Pennsylvania was denied.
 
 
 9
 Next, Fields filed a petition for a writ of habeas corpus in the federal District Court for the Eastern District of Pennsylvania, under 28 U.S.C. § 2254. In that proceeding Fields argued that 1) evidence of other crimes had been improperly admitted and 2) substitution of judges for sentencing was improper. The district judge ruled against Fields on the evidentiary claim.[2]
 
 
 10
 On the substitution claim, however, the district judge cited a Pennsylvania case, Commonwealth v. Thompson 328 Pa. 27, 195 A. 115 (1939), in which the Supreme Court of Pennsylvania said that a substitution of judges after the verdict was in should be permitted only in cases of necessity. Here there was no showing of necessity, so the substitution would violate the Thompson rule.
 
 
 11
 The Commonwealth had countered with another Pennsylvania case, Commonwealth v. Clay, 224 Pa. Super. 461, 307 A.2d 341 (1973), in which a similar sentencing by Judge Doty was upheld because the defendant failed to object. The Pennsylvania court in Clay held that defendant had waived his Thompson right. The district judge, in the case at hand, disposed of the Clay case with the observation that: "Our task, of course, is to resolve the issue (of waiver) by constitutional measurement." (Emphasis added). Finding the record deficient for purposes of determining that Fields made a knowing, intelligent waiver, the district judge ordered an evidentiary hearing, limited to the issue of waiver.
 
 
 12
 After that hearing, the district judge granted the writ of habeas corpus. In that opinion, the district judge summarized the prior opinion, in its relevant part, with: "Suffice it to say that we had concluded that substitution of the sentencing judge for the trial judge is proper (only) under the standard set forth in (Thompson, supra ). . . . ."
 
 
 13
 Two purposes of the evidentiary hearing are listed in that second opinion: 1) whether the substitution was justified, and 2) whether there was an intelligent waiver, necessary for constitutional rights. Because there was no evidence of necessity for the substitution and no evidence that Fields intelligently waived his right, the trial judge concluded:
 
 
 14
 We are and remain of the conclusion that the principles enunciated in Commonwealth v. Thompson, supra, cited with approval in the case of Randel v. Beto, 354 F.2d 496, 501 (5th Cir. 1965), require that a proper foundation be laid before a judge other than the trial judge may impose sentence. It is well settled that the imposition of sentence is an intricate and substantial part in the administration of justice and when sentence is imposed by a substitute judge, without legal justification, it constitutes a deprivation of a defendant's constitutional privileges.
 
 
 15
 (emphasis added). The district judge granted the writ; the Commonwealth brought this appeal.
 
 II
 
 16
 The only issue before us is whether there is a federal right to be sentenced by the same judge who presided at trial. In granting the writ, the district court did not explain the metamorphosis of the ban on substitution from a merely proper principle of state law to one of federal constitutional magnitude. Whatever principle the Commonwealth of Pennsylvania may have restricting substitution of judges, and however commendable that principle may be, a writ of habeas corpus can be granted only if the substitution in this case violated a right under the constitution or laws of the United States. 28 U.S.C. § 2254(a). No other court has held that there is such a right under the United States Constitution, although the precise issue has seldom arisen. We do not recognize a constitutional right to be sentenced by one's trial judge in every case.
 
 
 17
 Although the district court's concern on the issue of waiver is admirable, waiver of a constitutional right is an issue only if a constitutional right is involved. Whether or not Pennsylvania has created a state right to be sentenced by one's trial judge is irrelevant to that inquiry.
 
 
 18
 To establish the existence of this alleged constitutional right, the district court relied on the Pennsylvania case of Thompson, supra and Randel v. Beto, 354 F.2d 496 (5th Cir. 1965). In Thompson, the defendant objected to the substitution of judges during the impanelling of the jury. In dicta the Supreme Court of Pennsylvania said "the practice of substituting judges to hear motions for a new trial, suspending or imposing sentence should be confined solely to cases of necessity." Id. 328 Pa. at 31, 195 A. at 117. That this is the Pennsylvania rule is recognized in Commonwealth v. Clay 224 Pa. Super. 461, 307 A.2d 341 (1973).
 
 
 19
 As in our case, the defendant in Clay was sentenced, six months after his trial, by Judge Doty, who was not the trial judge. After quoting extensively from Thompson, supra, the Clay court said: "We find this standard (of restricting post-trial substitution to cases of necessity) commendable . . . ."[3] Id. at 463, 307 A.2d at 342. Again as in our case, there was no evidence that the trial judge in Clay was unavailable and that the substitution had been by necessity: "We see no reason why a judge who can travel to a distant county to preside specially at trial cannot also return for sentencing." Id. Dispositive, however, was defendant's failure to object to the substitution of judges at sentencing. Accordingly, the right provided by a state law, commendable though it may be, was deemed waived, and the sentence was affirmed.
 
 
 20
 As for Randel v. Beto, supra, the substitution of state judges in that case occurred during the course of a murder trial, and the defendant argued, on appeal from the denial of a grant of habeas corpus, that he had never consented to the substitution. The first state judge left, during the murder trial, to attend a "political engagement." The Fifth Circuit cited the Thompson court's dicta on substitution during trial not the dicta on substitution post-trial. The standard set out in Thompson for mid-trial substitution is much more stringent than the one for post-trial substitution: mid-trial substitution should occur only under "the most extraordinary circumstances." In Randel v. Beto, supra, the case was remanded to the district court for a hearing; the Fifth Circuit ruled that the district court erred in denying the petition without a hearing. In that case there may well have been an infringement of the Sixth Amendment or the Due Process Clause but it does not follow that there is a constitutional right in general against substitution of judges.
 
 
 21
 The substitution in Randel occurred during the course of a murder trial. In the case at hand, however, the trial had been completed, and the sentencing judge had familiarized himself with the record, had discussed the case with the trial judge, had the benefit of all the pre-sentence reports, and had even ruled on the post-trial motions which action involved a thorough review of the case. The district judge made no finding that Field's sentence was unduly harsh, or that the imposition of sentence was fundamentally unfair. The only criticism was that the Commonwealth had not followed its commendable policy of barring post-trial substitution, unless that substitution is necessary. The simple answer to that criticism is that a corollary of the Commonwealth rule is that a defendant must object to the substitution, and Fields did not object.
 
 
 22
 In order to affirm, we would have to find that a federal principle had been violated. We can perceive here no federal constitutional right to be sentenced by one's trial judge. Indeed, the Federal Rules of Criminal Procedure provide for the substitution of judges both during trial and after the trial. Fed.R.Crim.P. Rule 25(a) permits substitution during trial if necessitated by "death, sickness or other disability"; Rule 25(b) permits substitution after verdict or finding of guilt "(i)f by reason of absence, death, sickness or other disability" the trial judge is unable to perform the post-trial duties. Significant is the deletion, in 1966, of the words "from the district" following "(i)f by reason of absence." The Advisory Committee Note to that amendment said the deletion was made "to permit the local judge to act in those situations where a judge who has been assigned from within the district to try the case is, at the time for sentence, etc., back at his regular place of holding court which may be several hundred miles from the place of trial," but not if the trial judge is "available within a reasonable distance from the place of trial." 18 U.S.C. Rule 25, Notes of Advisory Committee on Rules. Here, the trial judge was some 168 miles from the place of trial.
 
 
 23
 Even in an extreme case of post-trial substitution, where "the sentencing judge is not the trial judge and has no special knowledge of the case, and where such a judge imposes the maximum sentence despite no aggravating circumstances," United States v. Bowser, 497 F.2d 1017, 1019 (4th Cir.), cert. denied 419 U.S. 857, 95 S.Ct. 105, 42 L.Ed.2d 91 (1974), the Fourth Circuit remanded, observing only that "a statement of reasons for the sentencing decision would seem to be highly appropriate." Id. at 1019. Moreover, in a footnote, the court voiced its concern that the sentencing judge may have confused defendant's role with a more culpable party's. Id. at n.2a.
 
 
 24
 This court was faced with a post-trial substitution caused by illness of the federal trial judge in United States v. Taylor, 469 F.2d 284 (3d Cir. 1972). Defendant objected to having a substitute federal judge rule on his post-trial motions, but was unable to show any resulting prejudice, and, moreover, failed to object at the time. We affirmed the district court judgment. In the case sub judice the defendant has also failed to show prejudice resulting from the substitution, in addition to having failed to object at the time.
 
 
 25
 In light of our ruling that, in this case, defendant had no federal constitutional right to be sentenced by his trial judge, it is unnecessary to reach the issue of waiver.
 
 III
 
 26
 After a thorough review of the record, and for the above reasons, the order granting the writ of habeas corpus will be vacated.
 
 
 
 *
 Judge Staley was a member of the court as originally constituted, but did not take part in the decision of this case due to illness
 
 
 [1]
 The letter reads:
 I do not desire to appear in Philadelphia for the sentencing of the two deferred cases, as above captioned. As to each defendant the crimes were repeat crimes by defendants who are set in a pattern of sexual violence. They deserve long prison sentences. In the case of Edison Fields he not only violently assaulted a ten year old girl in a normal sexual fashion, but also abnormally, at the point of a gun and with the use of chloroform, which fortunately did not kill. Violent as his crimes were I would bargain away some of the long sentence by acceptance of the sentence by the defendant. I do not want that child to ever have to undergo the relation of the experience again, in any Court tribunal.
 
 
 [2]
 We express no opinion on the propriety of the district court's ruling on the evidentiary claim, as this issue is not before us
 
 
 [3]
 The court added: "especially . . . where, as here, the defendant took the stand." Id. In our case, the appellant did not take the stand